HÉCTOR RUIZ SANTIAGO ET AL., demandantes y recurridos, v. ESTADO LIBRE ASOCIADO DE PUERTO RICO ET AL., demandados y recurrentes.

*Número:* R-84-303     *Resuelto:* 19 de abril de 1985

*Roberto Schmidt Monge, Procurador General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo, recurrente; *Plinio Pérez Marrero* y *Aurelio Gracia Morales,* abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

■ Este recurso, al decir de Manresa, "[e]s, al fin, un medio más, por cuyo cauce el Derecho, superando todas las dificultades, ensancha su ámbito movido de generoso afán hacia la espiritualización . . .". J. M. Manresa, *Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1967, T. VIII, Vol. 1, pág. 193. Ya desde *Velázquez v. Ponce Asphalt*, 113 D.P.R. 39, 48 (1982), siguiendo el pensamiento del jurista Santos Briz, habíamos aclarado que el "lucro cesante . . . trata de un perjuicio sufrido que consiste en una ganancia futura frustrada que con *cierta probabilidad era de esperar según el curso normal, ulterior de las cosas*. El perjudicado no tiene que demostrar con certeza absoluta que se habrían realizado las ganancias. Para distinguir entre un interés verdadero y uno inseguro o incierto, hay que distinguir entre la *mera posibilidad y la probabilidad* de una ganancia futura teniendo en cuenta que tal *vez en algún caso sea indemnizable la mera posibilidad*". (Énfasis suplido.)

## I

A solicitud del Estado Libre Asociado de Puerto Rico, revisamos la juridicidad y razonabilidad de la partida de $65,000 por "pérdida de ingresos futuros" concedida al menor Alex Ruiz Ruiz. Se funda en acción por negligencia en el cuidado y tratamiento médico con posterioridad a una operación de reducción cerrada, por fractura supracondilar en su brazo izquierdo, efectuada el 31 de agosto de 1979. Al momento del accidente y fractura el niño tenía cuatro años y medio.

Como resultado, Alex desarrolló una *contractura de Volkmann* en dicho brazo. Una fasciotomía[1] practicada fue tardía. También fue necesario someterlo a dos intervenciones

---

[1] Incisión quirúrgica para eliminar la obstrucción sanguínea de la extremidad afectada.

quirúrgicas de desbridamiento. Permaneció recluido por varios días en el Hospital Regional de Arecibo, en estado delicado de salud. Posteriormente, se le practicó una cirugía plástica en el Centro Médico de Río Piedras, durante otra hospitalización de 9 días. Estuvo sometido a terapia física. Alex tiene serias deformaciones y limitaciones: una incapacidad *total* (100%) en su mano izquierda y una física de 90% en el *brazo*. Combinadas representan una equivalencia de 54% de incapacidad en sus funciones fisiológicas generales. Ha desarrollado también un disturbio emocional de tipo depresivo. Su condición requerirá tratamiento en el futuro.

En su recurso, el Estado no cuestiona la negligencia. En esencia, objeta la compensación y aduce que la partida de $65,000, identificada como lucro cesante, no fue reclamada como daño especial conforme a la Regla 7.4 de Procedimiento Civil, que por la minoridad de Alex es improcedente y que la incapacidad fue compensada dos veces.

■  Por su primicia en esta jurisdicción, concentramos inicialmente en los méritos del error[2] relativo a la procedencia del lucro cesante, cuando el perjudicado es un menor.

---

[2] Respecto a la inadecuacidad de las alegaciones, coincidimos con el tribunal de instancia en que el apartado cuatro de la demanda constituye, en el umbral de lo mínimo, suficiente alegación. La misma, luego de relacionar la condición física del brazo y de la mano, reclama expresamente una *"incapacidad permanente* y los daños y sufrimientos pasados y los *futuros"*, estimados en $300,000. El procedimiento civil ha trascendido la mística de las palabras. *Moa* v. *E.L.A.*, 100 D.P.R. 573, 586 (1972). Aunque no es el mejor modelo de redacción, cumple con el propósito de alegar incapacidad resultante del accidente susceptible de entenderse como un reclamo dentro del concepto de lucro cesante. Véanse: *Prado* v. *Quiñones*, 78 D.P.R. 322, 331 (1955); *Betances* v. *Autoridad de Transporte*, 73 D.P.R. 223, 225–226 (1952). En el caso de autos no hubo sorpresas. Desde el 7 de febrero de 1983 —tres (3) meses antes de la vista— se notificó el testimonio del Dr. Bartolomé Stipec, economista, a ser utilizado para "ilustrar al Tribunal en cuanto al ingreso promedio devengado por un obrero en Puerto Rico".

El señalamiento del Estado, de que se concedió doble compensación por incapacidad, será objeto de posterior discusión.

El Estado descansa en algunos casos([3]) y tratadistas, que de una manera u otra definen el concepto de lucro cesante como interrupción y cese de ingresos. Exponen la dificultad en casos de menores —por ausencia de historial de ingresos previos— para determinar su monto sin caer en el campo de lo especulativo. Por su parte, el demandante recurrido se hace eco del siguiente razonamiento del foro de instancia:

> . . . En este caso, donde el niño Alex Ruiz ha sufrido una incapacidad física que lo habrá de limitar por el resto de su vida, resulta razonable el que se conceda una compensación por ingresos dejados de percibir pues los mismos, ciertamente, no son otra cosa sino, el resultado lógico de los daños generales sufridos por el menor.
>
> Respecto a la reclamación de los ingresos dejados de percibir, este tribunal reconoce que evaluar la pérdida de ingreso de una persona, que por razón de su edad no ha entrado aún en el mercado de empleo es un tanto difícil ya que no hay formas directas para medir esa pérdida como sería en el caso de una persona adulta con un historial de empleo reconocido. No obstante, este tribunal es de criterio que lo anterior no limita para que se[sic] en el presente caso se evalúe la pérdida de ingresos futuros del menor Alex Ruiz Ruiz. Es un hecho establecido e incontrovertido que este niño sufre una incapacidad que lo afectará por el resto de su vida. Secuela lógica de su incapacidad, ha de ser sin lugar a dudas, una merma en la capacidad de Alex para producir ingresos. Si la vista de este caso se hubiese celebrado dentro de quince años, esto es, para el 1998, no hubiera duda alguna que Alex Ruiz Ruiz contando entonces con veintitrés años de edad, tendría pleno derecho a recobrar la pérdida de ingreso por razón de tal incapacidad. En esa vista sólo se estaría discutiendo la forma de computar esa pérdida. Entendemos que igual derecho tiene Alex Ruiz Ruiz ahora cuando sólo ostenta ocho años de edad, pero sufre de igual forma su incapacidad. La diferencia básica entre ambas situaciones sería

---

([3])*Rodríguez* v. *Ponce Cement Corp.*, 98 D.P.R. 201 (1969); *Zeno Molina* v. *Vázquez Rosario,* 106 D.P.R. 324 (1977); *Franco* v. *Mayagüez Building, Inc.,* 108 D.P.R. 192 (1978).

la forma de computar el monto de pérdida que se tendría. Pero cualquier limitación que exista al computar el monto de la pérdida de ingreso futuro de un menor, quedaría completamente salvada si las proyecciones en que se basa dicho cómputo están basadas en supuestos reales y razonables; examinemos la situación del caso de autos. *Exhibit* III, págs. 29–31.

■ Para fines decisorios, habremos de referirnos a esta partida, con mayor rigurosidad científica, bajo la modalidad de *menoscabo del potencial de generar ingresos*. Lo hacemos, ya que el término de *lucro cesante* aprisiona la imaginación judicial al requisito de ingreso previo derivado de trabajo. En esta tarea, "[q]uizá sea conveniente recordar que en la dimensión temporal encontramos el pasado, el presente y el futuro. Pasado y futuro pueden imaginarse como 'cantidades' de tiempo, susceptibles de medición; el presente, en cambio, no es más que un punto, en perpetuo movimiento, que va desplazándose a lo largo del hilo de nuestra vida y transformando lo que hasta hace un instante era 'futuro', en un definitivo e irrecuperable pasado". L. Moisset de Espanes, *Reflexiones sobre el "Daño Actual" y el "Daño Futuro", con Relación al "Daño Emergente" y al "Lucro Sesante"*, 238 Rev. Gen. Leg. Jur. 195, 198 (1975).

Nuestra jurisprudencia no había abordado expresamente la cuestión. Sin embargo, existen precedentes que indirectamente tienden a sugerir que tal compensación procede. Así, en *Flores v. Sucrs. de Pérez Hermanos*, 29 D.P.R. 1046, 1052 (1921), dijimos que "el elemento más variable al determinar la compensación de una persona es su capacidad para ganar. Las cortes no hacen ninguna distinción particular entre un joven de veintiún años y un menor. *Un niño tiene a su favor todas las presunciones de que será una persona de condiciones normales y en condiciones de ganar lo que dicha persona ganaría*". (Énfasis suplido.) Este enfoque lo reiteramos en *García v. Fernández*, 52 D.P.R. 183, 188 (1937). Véase además *Torres v. A.F.F.*, 94 D.P.R. 314 (1967). Sin embargo, ya en

*Publio Díaz* v. *E.L.A.*, 106 D.P.R. 854, 871 (1978), habíamos reconocido que estos tipos de indemnización no están "inmunes de cierto grado de especulación". Inmerso en esa realidad, el criterio rector que aflora es el de probabilidad.

La mayoría de los tratadistas examinan la cuestión a base del concepto clásico de *lucro cesante*, y de la innegable realidad que arroja la ausencia absoluta de historial previo sobre ingresos de un menor, que sitúa este tipo de proyección futura en el área de lo eminentemente especulativo. Bajo este prisma, se inclinan a no reconocerlo.

A tal efecto, Castán Tobeñas, con apoyo en el pensamiento de Fischer, percibe que el lucro cesante " 'participa de todas las vaguedades e incertidumbres propias de los conceptos imaginarios. El único jalón sólido de razonamiento es la frustración de aquellos hechos de que hubiera brotado con seguridad la perdida ganancia, a no haberse interpuesto el evento dañoso. Pero siempre cabrá la duda, más o menos fundada, de si, a no ser ésa, otra circunstancia cualquiera hubiera venido a interrumpir el curso normal de las cosas. Sería demasiado severo el Derecho si exigiese al perjudicado la prueba matemática irrefutable de que esa otra posible circunstancia no se habría producido, ni la ganancia hubiera tropezado con ningún otro inconveniente. Mas, por otra parte, la experiencia constante nos enseña que las demandas de indemnización más exageradas y desmedidas tienen su asiento en este concepto imaginario de las ganancias no realizadas. Incumbe al Derecho separar cuidadosamente *estos sueños de ganancia,* como los llama Dernburg, de la verdadera idea de daño' ". A tal efecto aconseja —siguiendo la jurisprudencia española— "un prudente sentido restrictivo de la estimación de los perjuicios o lucro cesante". J. Castán Tobeñas, *Derecho civil español, común y foral,* 13ra ed. rev., Madrid, Ed. Reus, 1983, T. III, págs. 243–244. Véase D. Espín Cánovas, *Manual de Derecho Civil Español,* 6ta ed. rev., Madrid, Ed. Rev. Der. Privado, 1983, Vol. III, págs. 521–522. Díez-Picazo y Gullón,

aluden, con referencia a la casuística española, igual trayectoria restrictiva. Exponen:

> . . . No se concede indemnización cuando los perjuicios son "contingentes" o "dudosos". Interpretando literalmente esta idea, significa que el lucro cesante no se indemniza nunca. El lucro cesante es siempre un futurible. Es una ganancia futura que por hipótesis no llega a ser obtenida y esto es algo necesariamente contingente y dudoso. *El problema se deforma cuando se quiere exigir una comprobación rigurosa de que esa ganancia se hubiera necesariamente obtenido de no mediar el incumplimiento o el ilícito. El problema sólo puede plantearse en términos de probabilidad y sólo puede medirse de acuerdo con criterios de razón práctica.*
>
> La preocupación de nuestra jurisprudencia parece fundarse en que no se conceptúe como lucro cesante lo que *Dernburg* llamó "sueños de ganancia". *Castán* considera prudente la línea jurisprudencial restrictiva. Sin embargo, entre el criterio restrictivo —ganancia segura— y el criterio extensivo —ganancia posible— *existe un justo término medio, donde se encuentra la ganancia verosímilmente probable, teniendo en cuenta el curso normal de los acontecimientos.* (Énfasis suplido.) L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 3ra ed., Madrid, Ed. Tecnos, 1982, Vol. 2, pág. 626.

Coincidimos, en que estamos en la dimensión de lo conjetural. Cuál hubiese sido el destino de Alex en el curso normal de las cosas, de no haberse incapacitado, es una incógnita cuya respuesta sólo pertenece al Sumo Hacedor. No obstante, le cobijan las presunciones de una vida y desarrollo normal. *Flores* v. *Sucrs. de Pérez Hermanos*, supra. Aun así, el que pudiera derivar ingresos dependería de otras circunstancias no acaecidas. Nuestra condición humana no nos permite predecir el futuro. Al reflexionar sobre los imponderables y riesgos de la vida, advertimos lo intrincado del problema. El desarrollo y evolución de un menor hasta arribar a la mayoría de edad a base de presunciones de regularidad, crea un vacío temporal. Ello plantea siempre, bajo la hipótesis de no haber sufrido el menoscabo a su capacidad, las siguientes interro-

gantes: ¿Hubiese contraído alguna enfermedad o sufrido otro accidente incapacitante? ¿Terminado sus estudios? ¿Ingresado en la fuerza laboral? ¿Percibido ininterrumpidamente ingresos por 47 años? Y todo ello en un lapso más o menos lejano.

■ Sin embargo, un enfoque restrictivo fundado en esta incertidumbre humana, adolecería de la falla de penalizar a un menor por esa simple condición. Y sólo por la dificultad de carecer y poder proveer al juzgador elementos de juicio precisos, que de ordinario están accesibles en reclamaciones de adultos. Rechazamos la tesis que nos propone el Estado. Tal norma estaría reñida con el principio de hacer justicia y equidad correctiva. La minoridad de edad no debe atentar contra el principio superior de hacer cumplida, aunque imperfecta justicia. Ni un solo argumento en contrario ha superado la incontrovertible realidad de que aun tratándose de un menor, se ha destruido como ser humano su potencial de ingresos. Esa incapacidad, como premisa, no se discute. Sin embargo, se confunde su solución con el problema de la cuantificación de daños. El error estriba en recurrir por vía de metodología adjudicativa a la tradicional visión de valorar daños sobre la base de experiencia anterior en un trabajo retribuido. Lo que en casos de adultos resulta ser compensación de lucro cesante —en el rigor científico de la palabra— debe llanamente configurarse y entenderse como un daño o menoscabo al potencial de generar ingresos de un menor. Su estimación dependerá de la apreciación de todos los factores valorativos, al ponderarlos sin apego a una fórmula aritmética rigurosa, y reconocer que por su alto grado especulativo, la cuantía final específica será de razonable aproximación judicial. (⁴)

--------

(⁴) *Colón* v. *Municipio de Orocovis*, 100 D.P.R. 1009, 1015 (1972) —en que eliminamos la compensación por lucro cesante a base de que "no se presentó prueba sobre el estado de salud de la occisa ni del promedio de

El profesor Cappalli con profunda visión del dilema judicial expone:

> . . . Si el menor ha quedado permanentemente incapacitado, la lesión puede haber eliminado totalmente o haber reducido considerablemente su capacidad de generar ingresos, y el cálculo, *a pesar de ser aproximado,* debe hacerse. En esto, los tribunales han provisto pocas guías al señalar sencillamente que la salud y la personalidad del menor deben ser tomados en cuenta. La inteligencia del niño y su historial educativo, el trasfondo socioeconómico de su familia y cualquier información específica que esté disponible sobre las ambiciones del menor pueden ayudar a reducir la incertidumbre, aunque el cálculo siempre resultará impreciso. (Énfasis suplido y traducción nuestra.) R. Cappalli, *Tort Damages in Puerto Rico,* XLVI Rev. Jur. U.P.R. 241, 278 (1977).

El tratadista español Borrell Maciá argumenta:

> A pesar de ello, el tener en cuenta tan sólo las rentas de trabajo, a criterio de *Bona*[s]*i,* no siempre es justo, criterio —dice— cuya arbitrariedad e insuficiencia es patente cual el de los ingresos del lesionado o el de la repercusión de la lesión sobre sus ganancias . . . personas que viven con fuentes de ingreso distintas del trabajo retribuido, otras desempeñan actividades domésticas no retribuidas, y otras, en la época de la lesión no habían llegado aún a la edad necesaria para desarrollar una actividad retribuida. . . . (Énfasis suplido y escolio omitido.) A. Borrell Maciá, *Responsabilidades derivadas de culpa extracontractual civil,* 2da ed., Barcelona, Ed. Bosch, 1958, pág. 266.

En igual vertiente se sitúan dos autores puertorriqueños:

> El estimado futuro de los ingresos de un menor carente de registro alguno demostrativo de su capacidad productiva, plantea escuetamente el problema de si es o no una determinación especulativa. Al igual que en el caso del adulto, el problema del lucro cesante es necesario examinarlo en las dos situaciones clásicas en que se suscita: en caso de incapacidad permanente y en caso de muerte ilícita. *En la pri-*

---

ingreso derivado de su trabajo durante algunos años antes del accidente"— no es incompatible con esta decisión.

*mera situación, contemplada la penosa circunstancia de la incapacidad permanente, dramáticamente resalta la completa disminución de la capacidad productiva. Las consecuencias de ese hecho indeclinable sitúan al juzgador en un terreno donde la especulación se disipa casi en su totalidad. La función de resarcir el daño se da con mayor facilidad en este supuesto de hecho.* No obstante, la principal cuestión que se plantea es la de determinar los criterios a utilizarse para calcular la dimensión de la pérdida de ganancia por lucro cesante. (Énfasis suplido.) D. Fernández y C. E. Toro, *El lucro cesante en materia de responsabilidad civil extracontractual: La confusión de la torre de babel,* LII Rev. Jur. U.P.R. 31, 67–68 (1982).

En principio, merece nuestra aprobación este enfoque. La dificultad de precisar y concretar este daño es análoga a la delicada gestión judicial de valorar los sufrimientos mentales y morales por la muerte de un ser querido o por una lesión a la dignidad u honor de la persona. En tales situaciones, no es posible reducir a ecuaciones matemáticas exactas la valoración del daño. Realmente, el daño material es el único susceptible de ser así reparado. Sin embargo, nadie cuestiona hoy el principio de reparación del perjuicio moral, como "cúspide a que se ha llegado en materia de evaluación de daños". J. W. Hedemann, *Tratado de Derecho Civil* (J. Santos Briz, traductor), Madrid, Ed. Rev. Der. Privado, 1958, Vol. 3, pág. 124; M. Albaladejo, *Curso de Derecho Civil,* Barcelona, Ed. Bosch, 1977, T. II, Vol. 2, págs. 542–543. ¿Por qué entonces el derecho, como norma de civilidad jurídica, no puede progresar, y a modo de equivalencia conceptual al daño moral, reparar la pérdida real que representa el menoscabo de generar ingresos de un menor? ¿No gozan ambos de la característica de lo intangible? ¿No provienen los dos del mismo agravio?

Los medios con que cuenta el Derecho no alcanzan, por limitación humana, a la posibilidad de remediar males como los que van contra la vida, la fama o el honor, no compensables con la materia. Pero sí es posible, y así lo ha reconocido la doctrina, y de acuerdo con ella nuestro Tribunal Su-

premo, fundar en el daño moral la indemnización de aquellos perjuicios que son consecuencia en cuanto repercuten en el patrimonio del perjudicado, aunque aquí el nexo de que antes se habló no pueda ser requisito a tratar con tanta severidad, pues la ligazón entre una y otra clase de menoscabos no es tan fácil como pudiera parecer, lo que impone la necesidad de conceder a los Tribunales un cierto arbitrio, sin el que sería verdaderamente imposible la reparación en tales supuestos.

La exigencia del nexo permanece en cuanto ha de darse entre la acción u omisión culposa y el daño moral, pero como éste en sí no es susceptible de reparación, ha de producirse otro entre el daño moral y el patrimonial, siendo aquí donde la severidad no es posible, y, *ante el mal mayor, cual sería dejar sin compensación material a los que sufren daños irreparables, como los que hemos dicho, precísase forzar en un tanto la lógica para dar paso a la justicia, y de ahí el cierto margen de apreciación que ha de reconocérsele a los Tribunales y que el Supremo ha declarado con reiteración.* (Énfasis suplido.) Manresa, *op. cit.*, págs. 192–193.

◼ El menoscabo del potencial de generar ingresos, es una lesión identificable, con marcada probabilidad, que trasciende más allá del complejo mundo de lo teórico. Puede ser total o parcial. Es una realidad viva y humana que el imperativo de justicia debe remediar para evitar el mal mayor de la injusticia. Después de todo, la "jurisprudencia tiende, precisamente, a tornar menos dilatada la separación entre la ley y la justicia". A. Alvarado Velloso, *El juez, sus deberes y facultades, los derechos procesales del abogado frente al juez*, Buenos Aires, Ed. Depalma, 1982, pág. 23. Ante la alternativa de negar toda compensación, creemos que ese daño —materialmente cierto— debe ser reparado, aun cuando sólo sea en mayor o menor grado de aproximación. La compensación no va dirigida a sustituir ingresos —porque no los haya— sino a indemnizar mediante una suma global el potencial frustrado de generarlos ante la realidad de ese daño. Aplicable es el siguiente razonamiento: "[u]na cosa hay, indiscuti-

blemente, en el fondo de esas y parecidas situaciones: la lesión *cierta, real,* cuyos verdaderos alcances no pueden señalarse de antemano, sujetándolos a un cartabón rígido y estrecho. Siendo así, los pronunciamientos judiciales se inclinan a graduar la indemnización de conformidad con la importancia del suceso y las condiciones que lo rodean, fijando, generalmente, una suma global que produzca un interés adecuado." L. A. Colombo, *Culpa Aquiliana,* Buenos Aires, Ed. La Ley, 1944, pág. 646.

■ En esa función judicial estimativa y ante la ausencia de un historial previo de actividad retribuida, deben tomarse en cuenta el status del menor al momento de la incapacidad y su proyección futura razonable. Son factores apropiados, tales como: tipo de núcleo familiar, grado de estabilidad del hogar, edad, condición de salud física y mental previa, inteligencia, su disposición, educación alcanzada, hábitos de estudio, habilidad en la escuela, talento, intereses específicos, "entretenimientos y destrezas desarrolladas, grado de madurez y experiencia". Fernández y Toro, *op. cit.,* pág. 68. En cuanto a sus proyecciones, son pertinentes el examen de aquellas otras guías susceptibles de indicar mejores oportunidades para alcanzar destrezas o educación más avanzada. Borrell Macías, *op. cit.,* pág. 266. Finalmente, las leyes de salario mínimo, los promedios de ingreso en las variadas ocupaciones o profesiones prevalecientes, y los sistemas de retiro o la edad promedio de retiro forman parte del cuadro total.

Todos estos factores y aquellos adicionales que provean mejores elementos de juicio, servirán al juzgador para iluminar su conciencia y valorar e indemnizar *global y equitativamente* el menoscabo del potencial de generar ingresos. No procede, pues, la aplicación rígida e inflexible de fórmulas matemáticas. Reconocemos la paradoja que entraña la temprana edad, que hará más intrincado detectar y precisar algunos de los factores antes mencionados. H. McGregor, *Personal Injury and Death,* XI International Encyclopedia of

Comparative Law, Torts 49 (1972). También debemos alertar que esta función estimativa deberá ejercitarse con cautela y moderación para evitar "sueños de ganancias" infundados y desproporcionados. (5) El cálculo —más bien de aproximación judicial— no debe ser "hijo del capricho o adivinación", *Prado* v. *Quiñones*, 78 D.P.R. 322, 335 (1955).

■ Recapitulando, la compensación por el menoscabo del potencial de generar ingresos de un menor, no puede estar supeditada al concepto convencional de lucro cesante según lo hemos entendido hasta hoy. No es procedente razonarla como "restitución de ingresos". Más bien se compensa la *expectativa potencial* de haberlos producido. Recordemos que no tenemos el beneficio de ingresos previos. Su valoración no puede hacerse con el mismo criterio que la de lucro cesante, ya que éstos tienen mayor posibilidad de ser acreditados. Abordamos el campo de lo especulativo y conjetural, con la idea fija de que se producirá en el futuro como un hecho *cierto* y no eventual, una pérdida de ingresos en función de cierto grado de incapacidad física o total del menor. Claro está, sólo el tiempo podrá responder a las inquietudes y los imponderables apuntados. Aun así, estamos en condiciones de proveer un remedio que haga justicia, conscientes de que al igual que en el área de los daños morales, "no existen tablas o escalas mediante las cuales se pueda computar aritméticamente". *Colón* v. *Municipio de Guayama*, 114 D.P.R. 193, 203 (1983).

II

Al aplicar la exposición doctrinaria al caso de autos, notamos que el tribunal de instancia fijó la compensación de $65,000 a base del informe y estudio del perito Dr. Bartolomé Stipec. "[A]firma en su informe que partió de la base que el

---

(5) En *Zeno Molina* v. *Vázquez Rosario*, supra, págs. 327–328, resolvimos que el lucro cesante no es objeto patrimonial transmisible a los herederos de una víctima fallecida.

niño Alex Ruiz Ruiz por su condición física y mental estaba incapacitado en cuanto a labor productiva concierne. Asimismo, consideró el Dr. Stipec que de no haber sido por el accidente sufrido por el niño, éste hubiera alcanzado una educación equivalente a la escuela superior. Con esos supuestos y utilizando el ingreso mediano para una persona que alcanza un nivel de educación equivalente a escuela superior, el Dr. Stipec valoró la pérdida total de ingresos del menor Alex Ruiz Ruiz en $92,764.00. A la luz de la prueba presentada, el menor Alex Ruiz Ruiz tiene un cincuenta y cuatro (54%) por ciento de incapacidad en sus funciones fisiológicas generales y un cincuenta (50%) por ciento de limitación mental a raíz del disturbio emocional de tipo depresivo que padece, las que unidas representan una incapacidad total; máxime si tomamos en cuenta nuestro ascedente nivel de desempleo, lo que apunta a una gran competencia de muchos obreros físicamente sanos, cerrando las puertas a aquéllos con limitaciones físicas." *Exhibit* III, pág. 31. Tomando como punto de partida ese informe y aplicando los indicadores de alto desempleo, dicho foro concedió $65,000, por la "pérdida de ingreso futur[o]".

▮ No podemos refrendar totalmente esa cantidad. Primero, está basada en un informe predicado en tres supuestos limitados, a saber: (a) la edad del menor, ocho (8) años. Concluyó que ello significaba "que de no haberse incapacitado, se habría graduado a los 18 años de escuela superior"; (b) "que la edad de retiro es igual a 65 años" y (c) "si el joven no se hubiese incapacitado y entra al mercado laboral a los 18 años (después de haber completado la escuela superior), habría trabajado durante 47 años". Dicho perito advirtió, sin embargo, la complejidad envuelta "por la falta de información directa sobre su capacidad de trabajo y su capacidad para ganar ingresos. Lo único que podemos hacer es usar sus logros en la escuela, especialmente su promedio de notas, en las diferentes materias, como un indicador de su capacidad futura

de obtener ingresos. *Los psicólogos, psicómetras y educadores son los llamados a hacer juicio sobre las capacidades probables del caso que se está analizando"*. (Énfasis suplido.)

■ Segundo, el informe, como prueba, sigue criterios que corresponden propiamente al método de evaluar el lucro cesante de adultos. Su valor probatorio es limitado. No toma en cuenta el alto grado de especulación que, según hemos reconocido, existe en casos de menores. Tampoco la naturaleza distinta del daño, y por ende, su diferencia en la cuantificación razonable. A modo de ilustración, nótense los múltiples sucesos e incontables eventos diarios que es menester acumular por años y presumir en favor de Alex, de no haber sufrido la incapacidad: (a) que subsiguientemente no experimentó ninguna enfermedad seria ni otro accidente posterior que le incapacitara o limitara física o mentalmente para desempeñarse como obrero en el mañana; (b) que terminó felizmente una educación mínima; (c) que ingresó a la fuerza laboral; (d) que ininterrumpidamente percibió ingresos por 47 años. Ante esta enumeración, ¿puede negarse que ese futuro no susceptible de ser predecido, debido a las sorpresas e imponderables que nos da la vida, no contiene en sí mismo —también como una realidad concreta— un gran elemento de especulación? Aunque hemos concluido que ello no es óbice para el resarcimiento del daño sufrido, en su verdadera perspectiva, se plantea el problema de pretender sujetarlo a fórmulas matemáticas de restitución de ingresos. Frente a este dilema adoptamos como técnica adjudicativa el método de indemnización global aproximada. Por imperativo de justicia, el elemento altamente especulativo tiene que ser tomado en cuenta y opera a modo de substraendo, como *reductor*. McGregor, *op. cit.*, pág. 49.

Repetimos, no podemos convalidar los $65,000 concedidos por el tribunal de instancia. Aunque se probó el daño de menoscabo en el potencial de generar ingresos futuros, los ele-

mentos valorativos tangibles e intangibles, según relacionados en esta opinión, no son suficientes para sostener esa cuantía.

Ante esta situación hemos de adelantar que consideramos prudente posponer y referir al foro de instancia la determinación sobre la cuantía de aproximación judicial del daño. No obstante podemos analizar y adjudicar el planteamiento del Estado relativo a que se compensó dos veces la incapacidad física del menor. Dicho foro dispuso:

> Estimamos [que] la compensación de Alex por los daños sufridos debe ser de $205,000.00, la que dividimos así: Los daños físicos pasados y presentes del menor, $25,000.00; los daños físicos y *limitación física* que sufrirá el *resto de su vida* Alex, $30,000.00; las angustias y sufrimientos mentales presentes y futuros de Alex, incluyendo el desorden depresivo que padece y que limitan su capacidad sicológica, $40,000.00; la *incapacidad física total de la mano izquierda y del brazo izquierdo* (90%) la[s] cuales combinadas ascienden a un 54% de *inca[pa]cidad* de sus funciones fisiológicas generales, $50,000.00; la *pérdida de ingreso futur[o]*, $65,000.00. (Énfasis suplido.)

Al atender este señalamiento, nos viene a la mente la consabida dificultad intrínseca de evaluar daños físicos y mentales. Por su naturaleza intangible siempre surgen múltiples interrogantes. ¿Dónde terminan los daños físicos y comienzan las angustias mentales? ¿Qué frontera los separa? ¿Cuál tabla de medición utilizar? Nuestra conciencia judicial pausa. Lo único seguro que podemos afirmar es, que en este tipo de indemnización nunca es posible crear módulos matemáticos inalterables. Los puntos de referencia varían constantemente.

Conscientes del problema, notamos que el foro primario otorgó $25,000 como compensación por daños físicos pasados y presentes. Asimismo, vemos que la partida de $30,000, además de resarcir daños físicos futuros, indemniza la "limitación física" que Alex sufrirá el resto de su vida. La misma nos causa preocupación en varios extremos. Veamos. En el argot forense, "limitación física" goza de rasgos análogos al

de incapacidad física. Los autos revelan incontrovertidamente, que los daños físicos que experimentó Alex desde los inicios del tratamiento médico negligente, hasta la fecha en que se dilucidó el caso (mayo de 1983), a saber, casi cuatro (4) años después —medidos en términos de dolor físico real, intensidad y perdurabilidad— fueron sustancialmente mayores que los contemplados en el futuro. Si partimos de la hipótesis de que ambas partidas sólo adjudican daños físicos (pasados, presentes y futuros), nos confrontamos con una enigmática disyuntiva: o la de $25,000 es irrazonablemente baja o la de $30,000 demasiado alta. Véase *Urrutia* v. *A.A.A.*, 103 D.P.R. 643, 647 (1975). Bajo este supuesto, al menos matemáticamente, ciertamente las cuantías de $25,000 y $30,000 no guardan correspondencia lógica resarcitoria.

Carecemos de un pronunciamiento expreso del proceso deliberativo que animó al juzgador de instancia a combinar daños físicos prospectivos con la "limitación física futura" y sumarlos en $30,000. Aun así, opinamos que el asunto debe ser examinado desde la perspectiva más beneficiosa para Alex. Desde esta posición, lo máximo permisible en el ideal de acercarnos a la verdad y realidad del daño, es fraccionar la partida de $30,000. Consideramos razonable la proporción de $20,000 y $10,000. De este modo presumimos que $20,000 correctamente corresponden a los *daños físicos futuros* de Alex y el residuo a su *limitación física futura*. Únicamente así apreciada, se entiende entonces la razonabilidad de la suma de $20,000 por daños físicos futuros. De este modo, pierde parcialmente fuerza la vigencia del planteamiento del Estado de que la cuantía fue duplicada. No obstante, subsiste dicho señalamiento en cuanto al remanente de $10,000, al confrontarlos con la partida de $50,000 otorgada en igual concepto por la incapacidad total combinada de 54%. No hemos descubierto su razón de ser. Se impone, pues, la eliminación de esos $10,000.

Réstanos dictaminar sobre la partida de $65,000, deno-

minada por dicho foro como pérdida de ingresos futuros, y conceptualizada en esta opinión como "menoscabo del potencial de generar ingresos". Ciertamente, la misma está inextricablemente vinculada a la incapacidad fisiológica antes apuntada por la cual se concedió $50,000. Esta cuantía debe permanecer inalterada. Por otro lado, hemos resuelto que no existe impedimento jurídico para, en casos apropiados, resarcir el daño de incapacidad del potencial de generar ingresos. No obstante, el récord está huérfano sobre algunos de los factores pertinentes y elementos importantes imprescindibles. Su existencia hubiese situado al juzgador en mejor y más sólida posición para justipreciarlo, avanzando desde los menos probables —y en gradación relativa— hasta afincarse en el terreno sólido de los más probables.

En estas circunstancias, no podemos descargar satisfactoriamente nuestra función revisora sin la duda de incurrir en un error en cuanto a la evaluación de aproximación estimativa del daño. Consideramos razonable y prudente remitir al foro de instancia el asunto para que éste, tomando en cuenta las pautas aquí esbozadas, reevalúe esta partida.

Por los fundamentos expuestos, *se dictará sentencia que modifique la del tribunal de instancia a los fines de eliminar la suma de $10,000 de la partida de $30,000 concedida por limitación física futura, y se deja sin efecto la compensación fijada de $65,000, por alegada pérdida de ingresos futuros, para que dicho foro la reevalúe. En cuanto a la compensación de $30,000 a cada uno de sus progenitores, $10,000 por gastos de tratamiento físico y psicológico futuros y demás extremos, será confirmada.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión.