# 2008 DTA 95

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE CAGUAS**
**(PANEL XII)**

FRANCISCO NÚÑEZ ORTIZ, LETICIA RAMOS GUZMÁN Y
LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS
Apelados

v.

FUNERARIA GURABO MEMORIAL, ASEGURADORA ABC, EMPRESA Z
Apelantes

Núm. KLAN-08-00342

San Juan, Puerto Rico, a 16 de julio de 2008

Panel integrado por su Presidenta, la Juez Pesante Martínez,
el Juez Escribano Medina y la Juez Hernández Torres

Hernández Torres, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La Funeraria Gurabo Memorial, *et als.*, en adelante la apelante, nos solicita la revisión de una sentencia dictada por el Tribunal de Primera Instancia (T.P.I.), Sala de Caguas, Hon. Iris L. Cancio González (Jueza), el 21 de noviembre de 2007 y notificada a las partes el 4 de febrero de 2008.

Los hechos relevantes a la controversia ante nos son los siguientes.

### I

Francisco Núñez Ortiz, Leticia Ramos Guzmán y la Sociedad Legal de Gananciales compuesta por ellos, en adelante los apelados, radicaron una demanda en daños y perjuicios contra los aquí apelantes.

Alegan que el 30 de septiembre de 2005, a las 11:00 a.m., el apelado estaba trabajando como empleado del Departamento de Transportación y Obras Públicas, fue a recoger unos escombros en la parte de atrás de la apelante (Funeraria), quien había solicitado los servicios del Municipio. En un momento que alzó un panel para tirarlo al camión de escombros, su pie derecho cayó en un tubo de desagüe que dejaba al descubierto parte de una tubería de desperdicios biomédicos. Esto ocasionó que el apelado se cayera al piso y el panel de madera le cayó encima. Se calculó que ese panel de madera pesaba unas cincuenta (50) libras.

Como resultado de la caída, el apelado sufrió laceraciones y traumas en el pie izquierdo y en los brazos. Fue llevado al Hospital Municipal, pero le trasladaron al dispensario del Fondo del Seguro del Estado, en Caguas, para fines de diagnóstico y tratamiento. Allí le diagnosticaron torcedura de tobillo derecho sin fractura y fue inmovilizado, recibiendo tratamiento por siete (7) meses.

Como el registro o hueco donde cayó, se encontraba desprovisto de su tapa y que por ahí discurrían desperdicios biomédicos, se sometió al apelado al protocolo médico establecido ante la posibilidad de contagio de enfermedades o virus como el HIV. El protocolo consistió en descanso, observación, toma de medicamentos, tanto por vía oral como sanguínea, para reforzar el sistema inmunológico.

De igual modo, el apelante fue intervenido quirúrgicamente el 26 de abril de 2006, por una hernia inguinal que se produjo durante el accidente. Recibió diez (10) terapias físicas para el tobillo.

Culminando el descubrimiento de prueba, las partes presentaron el Informe Sobre Conferencia Preliminar Entre Abogados. El aquí apelante negó categóricamente responsabilidad por los hechos alegados en la demanda.

En el juicio testificaron los apelados, Sr. Núñez, Sra. Ramos y un perito, el Dr. Fausto Boria; además de que el récord médico del apelado fue admitido como prueba documental.

La apelante no presentó testigo alguno. De hecho, había anunciado al dueño de la Funeraria como testigo y luego no lo utilizó.

De la transcripción de la vista surge claramente que el lugar donde cayó el apelado no estaba cubierto ni había ningún rótulo que lo identificara. Tampoco había personal de la apelante que pudiera advertir sobre la existencia del hoyo o tubo.

El perito médico, cuyo testimonio no fue controvertido, estimó una incapacidad de un 3% de carácter permanente. Esto le impide llevar a cabo tareas pesadas, como las que realizaba, lo que limita su capacidad para generar ingresos.

De otra parte, surgió por los testimonios vertidos que el apelado quedó desempleado sujeto al pago del Fondo del Seguro del Estado, ocasionándole una situación económica muy mala donde tuvo que entregar el carro y fue desahuciado de la casa donde vivía alquilado. Su esposa estaba embarazada y fue la que lo atendió y acompañó siempre durante todo este proceso.

Luego de escuchar los testimonios y de aquilatar la prueba documental presentada, el T.P.I. declaró Con Lugar la demanda y concedió varias cantidades por razón de daños físicos, morales, pérdida de ingreso, entre otras.

El aquí apelante, inconforme con tal determinación, señala que el T.P.I. erró al determinar que el accidente se debió única y exclusivamente a la negligencia de la apelante sin determinar negligencia comparada, a pesar de que la prueba desfilada en el juicio sostiene que el apelado contribuyó a la ocurrencia del accidente. También alega que el T.P.I. erró al estimar que valoró adecuadamente los daños basados en la prueba desfilada en el juicio, así como al determinar que la apelante fue temeraria y que debió objetar en el juicio la partida concedida de pérdida potencial de generar ingresos.

Discutidos los hechos relevantes, expresaremos la norma jurídica.

## II

El Artículo 1802 del Código Civil, 31 L.P.R.A. Sec. 5141 expresa lo siguiente:

*"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."*

El Art. 1802 del Código Civil de Puerto Rico, *supra*, establece una causa de acción contra todo aquel que por acción u omisión cause daño a otro interviniendo culpa o negligencia. El propósito de la ley es proveer a todo aquel que sufra daño un medio de resarcimiento contra aquellos que no ejercen el debido cuidado en sus actuaciones.

En una reclamación de daños y perjuicios al amparo de este artículo es indispensable probar la relación causal entre el acto negligente y el daño. El Tribunal Supremo adoptó en Puerto Rico la doctrina de la *causalidad adecuada* para saber si existe nexo causal entre la negligencia y el daño. *Montalvo v. Cruz*, 144 D.P.R. 748 (1998). Lo fundamental es determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de este posible cálculo. De acuerdo con esta teoría, no se considera causa toda condición sin la cual no se hubiera producido el daño, sino sólo aquélla que ordinariamente produce ese daño, según la experiencia general.

El demandante debe probar, por lo tanto, que la negligencia del demandado fue la que con mayor probabilidad causó el daño sufrido. *Miranda v. E.L.A.,* 137 D.P.R. 700 (1994); *Aseg. Lloyds London v. Cía Desc. Comercial,* 126 D.P.R. 251 (1990); *Cárdenas Maxán v. Rodríguez Rodríguez,* 125 D.P.R. 702 (1978); *Murcelo v. H. I. Hattinger & Co.,* 92 D.P.R. 411 (1965).

La cantidad de prueba requerida para probar una causa de acción al amparo de este artículo lo es aquella que produzca convicción moral en ánimo no prevenido; sólo se requiere certeza moral. Esto significa que la parte que hace la reclamación no tiene que probar su caso con exactitud matemática mediante evidencia directa o concluyente. Tampoco tiene que ser evidencia que produzca un grado tan perfecto de convicción que no admita la posibilidad de prueba en contrario. *Vaquería Garrochales, Inc. v. A.P.P.R.*, 106 D.P.R. 799 (1978); *Murcelo v. H. I. Hattinger & Co., supra.*

La ley y la jurisprudencia se limitan a requerir que los casos civiles se prueben por preponderancia de prueba. Esto no es más que establecer como hechos probables aquéllos que con mayores probabilidades ocurrieron, no se le exige al demandante que excluya toda otra posible causa de daños. *Zambrana v. Hospital Santo Asilo de Damas,* 109 D.P.R. 517 (1980); *Berríos v. U.P.R.,* 88 (1985).

## Determinaciones de Hechos y Credibilidad

Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. *Rodríguez v. Pérez y otros,* Op. de 30 de marzo de 2005, 163 D.P.R. ____ (2005), **2005 J.T.S. 41**; *Argüello v. Argüello,* 155 D.P.R. 62 (2001); *Trinidad v. Chade,* 153 D.P.R. 280 (2001); *Quiñones v. Manzano,* 141 D.P.R. 139 (1996); *Orta v. Padilla,* 137 D.P.R. 927 (1995); *Vélez v. Srio. de Justicia,* 115 D.P.R. 529 (1984); *Ortiz v. Cruz Pabón,* 103 D. P.R. 939 (1975); *Rodríguez v. Concreto Mixto, Inc.,* 98 D.P.R. 579 (1970).

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. *Argüello v. Argüello, supra.* La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. *Id.*; *Pueblo v. Bonilla Romero,* 120 D.P.R. 92 (1987). El juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. *Argüello v. Argüello, supra.* "*[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito*". *Miranda Soto v. Mena Eró,* 109 D.P.R. 473 (1980); *Alicea v. Sucn. F. Gil Rivera,* 87 D.P.R. 789 (1963); *Villaronga, Com. v. Tribl. De Distrito,* 74 D.P.R. 331 (1953).

Aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los tribunales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. *Negrón Rivera y Bonilla, ExParte,* 120 D.P.R. 61 (1987).

Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez Rodríguez v. López Jiménez,* 116 D.P.R. 172, 181 (1985); *Pérez v. Hosp. La Concepción,* 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Véase, *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8 (1987); *Vélez v. Srio. de Justicia, supra.*

## Valorización de Daños

Según se conoce, en nuestro ordenamiento, la responsabilidad civil en daños y perjuicios postula el deber de resarcir al damnificado, otorgándole un valor económico al daño sufrido. *Rivera v. Tiendas Pitusa, Inc.,* 148 D. P.R. 695 (1999); *S.L.G. v. F.W. Woolworth & Co.,* 143 D.P.R. 76 (1997); *García Pagán v. Shiley Caribbbean, etc.,* 122 D.P.R. 193 (1988).

Por daño se entiende todo aquel menoscabo material o moral que a consecuencia de un acontecimiento o evento determinado sufre una persona, ya bien sea en sus bienes vitales naturales, en su propiedad o en su patrimonio. *Cintrón Adorno v. Gómez,* 147 D.P.R. 576 (1999); *García Pagán v. Shiley Caribbean, supra.*

Este menoscabo se clasifica, de ordinario, en daño patrimonial y no patrimonial. Como daños patrimoniales se entienden aquéllos que producen un menoscabo valorable en dinero sobre los intereses patrimoniales del perjudicado.

Mientras los no patrimoniales son, en principio, aquéllos cuya valorización en dinero no tiene la base equivalencial que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria. *Galib Frangie v. El Vocero de P.R.,* 138 D.P.R. 560 (1995).

El resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. Es como una subrogación real en que el dinero ocupará el lugar de los daños y perjuicios sufridos, siendo una atribución pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado. *Rivera v. Tiendas Pitusa, Inc., supra; S.L.G. v. F.W. Woolworth & Co., supra; García Pagán v. Shiley Caribbean, etc., supra.*

Ocasionando un menoscabo en la esfera jurídica de otra persona, la reparación que procede consiste en reintegrar esa esfera lesionada a su estado anterior del daño. Sólo cuando no sea posible esa reintegración al estado originario, se acudirá a verificar la reparación en dinero. *Galib Frangie v. El Vocero de P.R., supra; Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443 (1985).

Por tanto, la reparación puede verificarse de dos forma: (1) la reparación natural o reintegración en forma específica, o (2) la indemnización en dinero. Estas dos alternativas son mutuamente excluyentes. *Galib Frangie v. El Vocero de P.R., supra; Rodríguez Cancel v. A.E.E., supra.*

La alternativa inicial de restablecer al perjudicado a la situación en que se hallaba antes de sufrir el daño constituye la solución ideal, por lo que únicamente debe acudirse a la indemnización en dinero si el restablecimiento de la condición original no es factible. *Galib Frangie v. El Vocero de P.R., supra.*

En el segundo caso, el dinero muchas veces no puede ser paragonado con el dolor padecido, pero con éste se persigue proporcionar a la víctima una compensación que, sin llegar a devolverle lo perdido, le permita procurarse placeres y satisfacciones, psíquicas o mentales, aptas para atenuar el dolor sufrido. *Cintrón Adorno v. Gómez, supra; Riley v. Rodríguez de Pacheco,* 119 D.P.R. 762 (1987).

El derecho a ser compensado no puede derrotarse meramente por el carácter especulativo que en alguna medida supone el cómputo de los daños. *Rivera v. Tiendas Pitusa, Inc., supra, S.L.G. v. F.W. Woolworth & Co., supra.*

Al medir los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, procurando siempre que la indemnización no se convierta en una industria y que no lesione la economía. Este deber de los jueces tiene el propósito de conservar el sentido remediador y no punitivo de

nuestra responsabilidad civil. *Rivera v. Tiendas Pitusa, Inc., supra*; *S.L.G. v. F.W. Woolworth, supra*. Por ejemplo, los sufrimientos mentales y físicos son cuantificables al infinito, por lo que sin unos límites razonables, la indemnización dejaría de tener la característica de resarcimiento para convertirse en una punitiva. *Riley v. Rodríguez de Pacheco, supra*.

La gestión judicial de estimación y valorización de los daños es, pues, una difícil y angustiosa labor, al no existir un sistema mecánico que nos permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas. *Nieves Cruz v. U.P.R.*, 151 D.P.R. 150 (2000); *Rodríguez Cancel v. A.E.E., supra*.

Mientras tanto, esta labor descansa en la sana discreción del juzgador. Los tribunales de instancias están, en principio, en una mejor posición para apreciar y determinar los daños sufridos. Ello es así, en cuanto son éstos los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. *Id.*

De ahí surge una norma de abstención judicial. Conforme a ésta, un foro apelativo no interviene, de ordinario, con la adjudicación de los daños realizada por el Tribunal de Primera Instancia, a menos que la cuantía concedida resultase ridículamente alta o extremadamente baja. En todo caso, la parte que solicita la modificación de las sumas concedidas a nivel de primera instancia viene obligada a demostrar la existencia de circunstancias que lo justifiquen. *Nieves Cruz v. U.P.R., supra; Rivera v. Tiendas Pitusa, Inc., supra; Flores Berger v. Colberg*, **2008 J.T.S. 110**, Opinión de 20 de mayo de 2008.

Expuesta la norma jurídica, discutiremos los planteamientos esbozados por la apelante.

En primer lugar, la apelante alega que el T.P.I. erró al no hacer una determinación de negligencia comparada. Luego de estudiar los escritos, pero sobretodo la transcripción de la vista en su fondo, no tenemos duda alguna que a la apelante no le asiste la razón.

De la prueba desfilada ante el T.P.I., la cual hemos evaluado, surge meridianamente claro que hubo *"ausencia total de prueba que pudiera dar lugar a que se aplicara la figura de negligencia comparada. Para el T.P.I., "los hechos son tan claros que no han sido controvertidos"*. (Sentencia, pág. 9). Coincidimos totalmente con esa determinación del T.P.I.

La apelante no ha controvertido absolutamente nada con relación a la negligencia y tampoco ha derrotado la deferencia de la cual goza la apreciación de la prueba y las determinaciones de hechos realizadas por el T.P.I. No se trata, como bien hacer ver la apelante, de que el T.P.I. entendiera que debió presentar prueba independiente y no descansar en la prueba del apelado. Ni el T.P.I. ni este Tribunal le dictan a las partes cómo llevar sus casos. No obstante, lo cierto es que de la prueba surge una clara negligencia atribuible sólo a la apelada. Las especulaciones sobre el peso del apelado, sus zapatos, etc., son eso... meras especulaciones. Nada fue controvertido.

Al igual que al T.P.I., los testimonios que surgieron nos parecen tener entera credibilidad.

La apelante plantea que la compensación otorgada fue excesiva. No le asiste la razón. La suma total a ser pagada asciende a $80,000.00 y se desglosan de la siguiente forma:

*"a. $15,0000.00 – angustias y sufrimientos mentales del Sr. Francisco Núñez.*

*b. $10,000.00 – angustias mentales de la Sra. Leticia Ramos.*

*c. $30,000.00 – por los daños físicos de Francisco Núñez.*

*d. $15,000.00 – menoscabo de su capacidad de generar ingresos.*

*e. $10,000.00 – por temeridad en honorarios de abogado."*

El apelado no sólo sufrió daños físicos considerables, consistentes en laceraciones, problemas del tobillo derecho que hubo que inmovilizar, sesiones de terapias y una cirugía por una hernia. También tuvo que ser sometido al Protocolo para prevenir enfermedades de transmisión como el VIH, pues el tubo del hoyo en que cayó era de desperdicios biomédicos.

No es difícil imaginar las angustias de esta persona y de su esposa con dos meses de embarazo, sobre la posibilidad de un contagio con una peligrosa enfermedad, además del dolor y los tratamientos por los daños físicos. (Transcripción, pág. 15).

De otra parte, los apelados fueron desahuciados por falta de pago de la casa que residían (transcripción, págs. 42.43). Tuvieron que entregar un carro usado que poseían por no poderlo pagar, lo que los obligada a hacer todas las gestiones en transportación pública, él con muletas y ella embarazada y ayudándole en todo.

Además, el testimonio pericial fue claro en advertir que el apelado no iba a poder realizar el trabajo que hacía. El ex jefe del apelado le advirtió que el único trabajo disponible era *"de hacer fuerza".*

En cuanto a la suma por temeridad, somos del criterio que el T.P.I. no abusó de su discreción. Estamos plenamente convencidos que la apelante no realizó ningún esfuerzo por transigir lo que a toda luces era un acto negligente de su parte. Todo lo contrario, siempre negaron responsabilidad total y absolutamente.

Este, a nuestro juicio, es uno de esos casos que no deben ocupar el tiempo del Tribunal por haber hechos no controvertidos y una negligencia clara. En síntesis, entendemos que las cuantías otorgadas son razonables y justicieras sin ser punitivas. Esos errores tampoco se cometieron.

En cuanto al error que señala la apelante en torno al menoscabo de la capacidad de generar ingresos, en ningún lugar, ni de la sentencia ni en la transcripción, surge que el T.P.I. le indicara a la apelante que debía refutarlo en la vista. No sabemos en qué la apelante fundamenta ese error.

Ya hemos mencionado que el apelado no podrá realizar el mismo trabajo que hacía. Es decir, tendrá limitaciones y eso precisamente es el daño que se compensa. Esto no va dirigido a sustituir ingresos, sino a indemnizar un potencial frustrado. *Ruiz Santiago v. E.L.A.,* 116 D.P.R. 306 (1985).

Reiteramos que los errores alegados por la apelante no fueron cometidos.

### III
Por los fundamentos anteriormente esbozados, confirmamos la sentencia apelada.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María E. Pérez Ortiz
Secretaria del Tribunal de Apelaciones