**DRAFT–LINE CORP., Plaintiff,**

v.

**The HON COMPANY, Defendant.**

**Civ. No. RLA 89–1038 (JAF).**

United States District Court,
D. Puerto Rico.

Dec. 2, 1991.

José A. Feliciano, San Juan, P.R., for plaintiff.

John F. Malley III, McConnell Valdes Kelley Sifre Griggs & Ruiz–Suria, San Juan, P.R., for defendant.

## OPINION AND ORDER

FUSTE, District Judge.

The action is now before us on defendant's motion for summary judgment. The case involves an alleged breach of Puerto Rico's Dealer's Act, Act No. 75, of June 24, 1964, as amended, 10 L.P.R.A. §§ 278–278d (Dealer's Act). The parties are of diverse citizenship and the matter in controversy exceeds the jurisdictional amount. 28 U.S.C. § 1332.

A Puerto Rico-based retail dealership is suing its principal, the manufacturer and supplier of office furniture, for damages as a result of an impairment of contractual relations by the latter. We find that although the defendant improperly terminated the exclusive nature of its contract with plaintiff, thereby impairing the contract, the plaintiff has failed to show a genuine issue of material fact as to recoverable damages. We grant defendant's motion for summary judgment.

### Facts

In a letter dated March 28, 1977 the plaintiff, Draft Line Corp. (Draft Line), contacted the defendant, Hon Co. (Hon), with an offer to act as its exclusive wholesale representative in Puerto Rico. Hon responded on June 20, 1977 granting Draft Line a retail dealership on an exclusive basis for a trial period of six months. This was accepted by Draft Line in a letter dated July 20, 1977. After the six-month trial period expired, neither party initiated any discussion on the issue of the continuation or termination of Draft Line's exclusive dealership status, and the relationship continued unaltered. The exchange of letters constituted the only indication of the intent of the parties concerning their relationship: there was never a formal written contract. Over the next ten years the relationship remained stable, the only change being in the payment terms. The original payment policy was net 30 days as of the date of the invoice. A few months later this was changed by Hon to net 60 days as of the date of the invoice, a more liberal payment term. Eventually, in 1981, the payment terms changed again to a "cash in advance" (CIA) system. This last change was the result of plaintiff's inability to meet payment deadlines under the existent payment policy. Because plaintiff was often late with its payments, defendant consistently shipped late. Defendant's policy was not to release any orders for production on accounts past due. This precautionary action was consistent with the defendant's national business policies. Despite its continuing requests for an open account with payment terms of 30/60/90 day drafts, Draft Line abided by the payment terms set by Hon. This situation existed for the remaining term of the relationship and neither party actively sought to change it.

In 1987, the defendant abruptly informed plaintiff that it would begin accepting orders from other dealers. Plaintiff objected, insisting that the defendant could only increase its penetration of the Puerto Rico market through plaintiff's dealership. But the only conditions under which plaintiff could have imported more of defendant's

products would have been with more liberal payment terms. Defendant refused to change its payment policies, and began accepting orders from other dealers to increase its market in Puerto Rico. It never indicated to plaintiff that it intended to stop dealing with plaintiff.

Plaintiff filed suit under Law 75, alleging impairment of an exclusive dealership through the termination of the exclusive nature of the contract. The relationship between the parties deteriorated and plaintiff began reducing its orders from the defendant: orders went from an average of $60,000 annually to $28,140 in 1988 and $694 in 1989. In 1990, however, plaintiff again began ordering from Hon and orders had reached $60,000 by October of 1990. Since 1987, Hon has accepted orders from four other dealers at payment terms which appear to be the same or less favorable than those plaintiff was receiving. We note that defendant's total annual sales in Puerto Rico have increased from an average of $60,000 with plaintiff from 1977 to 1987 to $669,490 in 1989. The defendant has moved for summary judgment.

### Summary Judgment

In order to defeat a motion for summary judgment made pursuant to Fed.R.Civ.P. 56, the non-moving party must demonstrate the existence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). How exactly this is accomplished depends upon whether the nonmoving party would or would not bear the burden of proof at trial. Where the moving party bears the burden of proof at trial, the motion must be supported by credible evidence "that would entitle it to a directed verdict if not uncontroverted at trial." *Id.* at 331, 106 S.Ct. at 2557. For factual issues on which the nonmoving party would bear the burden of proof at trial, the moving party may satisfy its burden of production in two ways: present affirmative evidence that negates an essential element of the nonmoving party's claim or demonstrate that the nonmoving party's evidence is insufficient to estab-

lish an essential element of the nonmoving party's claim. *Id.* Only then does the burden of production shift to the nonmoving party to establish the existence of at least one fact issue which is both "genuine" and "material". *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Which facts are material is determined according to the substantive law at issue. *Id.* at 248, 106 S.Ct. at 2510; *Sheinkopf v. Stone*, 927 F.2d 1259 (1st Cir.1991). If the identified facts provide evidence "such that a reasonable jury could return a verdict for the non-moving party," then the dispute is genuine. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. If the nonmoving party fails to make a sufficient showing, "[t]he moving party is 'entitled to a judgment as a matter of law.'" *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552. The facts must be reviewed in the light most favorable to the non-moving party. *Sheinkopf v. Stone*, 927 F.2d at 1262.

In this case, the defendant is moving for summary judgment on two grounds: first, that it had just cause for termination of the exclusive nature of the contract and, second, that plaintiff has failed to show damages. Since just cause is an affirmative defense, the ultimate burden of proof falls on the defendant. *Warner Lambert v. Superior Court of Puerto Rico*, 101 D.P.R. 378, 387 (1973). In that case, defendant's motion must be supported by credible evidence that would entitle it to a directed verdict. Because damages is an issue plaintiff must prove at trial, defendant may succeed by showing that plaintiff has insufficient evidence to establish any actual damage to plaintiff.

### The Dealer's Act

The Dealer's Act was enacted by the Puerto Rico Legislature to prevent the economic exploitation of local dealers. The Legislature had observed that dealers in Puerto Rico were particularly vulnerable to summary termination once they had established a favorable market for a principal's

products.[1] Law 75 provides that a dealership contract may only be terminated for just cause,[2] which is defined as deleterious behavior on the part of the dealer. "Just cause" for the termination of a dealership includes the "nonperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service." 10 L.P.R.A. § 278(d). While the law's structure is clearly protective of the economically weaker party, its mechanism is not pure protectionism. It was "directed to level the contractual conditions between two groups financially unequal in their strength." *Walborg Corp. v. Tribunal Superior*, 140 D.P.R. 184, 189 (1975), *translated in* 4 Official Translations 258, 265 (1975).

The Dealer's Act extends to cases where a principal establishes parallel dealerships without necessarily terminating the original dealer as is the situation in this case. Since the law was designed to prevent the gradual elimination of a dealership, as well as its complete termination,[3] this court held in an earlier case that it may be applied to "cover not only the case of a distributor who is deprived of the distribution of a product without just cause, but also every situation of impairment of a line of distribution." *General Office Products Corp. v. Gussco Mfg., Inc.*, 666 F.Supp. 328, 331 (D.P.R.1987). That case applied Law 75 to a situation where the principal had violated the exclusivity of its relationship with a dealer by establishing parallel dealerships.

■ A claim for impermissible termination or impairment of a dealership contract under section 278 has two essential elements: that the contract existing between the parties was impaired or terminated without just cause and that there were resulting damages. After the plaintiff has shown an impairment or termination of the contract, the defendant may offer the affirmative defense of just cause. If there was no just cause, the plaintiff must show damages.[4] We will treat these two issues one at a time.

## Just Cause

■ On the issue of just cause, the defendant has not provided enough evidence to show that it is entitled to summary judgment. The defendant has a heavy burden: not only does it have the ultimate burden of proof on the issue of just cause, but there is a presumption under the statute that by establishing parallel dealerships it has impaired the contract.[5] Defendant

---

1. The most cited statement of legislative purpose for Law 75 reads: "The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, concessionaires, or agents, or without fully eliminating them, such enterprises gradually reduce and impair the extent of their previously established relationships, as soon as these have created a favorable market and without taking into account their legitimate concerns." *Warner Lambert Co. v. Superior Court of Puerto Rico*, 101 D.P.R. 378, 387 (1973), *translated in* 1 Official Translations 527, 541 (1973).

2. § 278a. Termination of Relationship
Notwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause.

3. See n. 1 above.

4. The statute, with its extensive damages clause, does not contemplate any other remedy. Indeed, given the nature of distribution contracts, civil law does not allow equitable remedies for such contracts. *Félix A. Rodriguez, Inc. v. Bristol–Myers Corp.*, 281 F.Supp. 643 (1968).

5. In a 1988 amendment, the Legislature made certain actions by the principal, including the establishment of parallel dealerships, presumptions of impairment of the contract. The amendment to section 278a writes a presumption of impairment into the statute where the "principal or grantor establishes a distribution relationship with one or more additional dealers for the area of Puerto Rico." 10 L.P.R.A. § 278a–1(b)(2) (as amended on July 13, 1988). This was a reaction to the liberal approach to Act 75 implied in *Medina & Medina v. Country Pride Foods, Ltd.*, 88 J.T.S. 6162, 6168 (1988), *translated in Medina & Medina v. Country Pride Foods, Ltd.*, 858 F.2d 817, 823 (1st Cir.1988). The reaction of the legislature must be read as limiting how freely courts can approach the statute when determining just cause.

argues that the Dealer's Act does not prevent a principal from terminating the exclusivity of its relationship with a dealer if the dealer refuses to grow with the principal. Defendant maintains that since the plaintiff admits it could not increase the volume of its sales without a radical change in the existing relationship, defendant had just cause to establish other dealerships. A showing of just cause has two possible forms: Defendant must establish that plaintiff either failed to perform an essential obligation of the contract or it must show that plaintiff adversely and substantially affected the interests of the principal. Here defendant cannot establish that Draft Line has failed to perform an essential contract obligation because the contract between it and Hon contained no requirement to grow.[6]

■ As to whether some action or omission by Draft Line affected the interests of the principal, that cannot be determined by the court in this case. There are two possible ways of looking at the situation presented here. On the one hand, defendant's actions could be seen as a response to plaintiff's obstructive *refusal* to allow defendant to expand into the existent Puerto Rican market. On the other hand, plaintiff's *inability* to import more of defendant's products could be seen as the result of the terms imposed by the contract. Neither characterization allows us to reach a decision as to whether there was just cause. In the case of plaintiff's inability to expand, we refuse to find as a matter of policy that the inherent economic weakness of the principal's chosen exclusive dealer is an adequate ground for terminating the exclusivity of the relationship. In the case of plaintiff's obstructive refusal to grow, we cannot rule because defendant has not presented enough evidence to suggest to the court that the plaintiff was intentionally and unreasonably obstructive. Questions still exist as to the actual sequence of events, the amount of negotiation which occurred, and plaintiff's motives for "refusing" to expand. These are issues of fact which in the context of this summary judgment motion must be resolved against defendant.

The defendant suggests in its brief that a recent Supreme Court of Puerto Rico case, *Medina & Medina v. Country Pride Foods, Ltd.*, 88 J.T.S. 6162, 6169 (1988), *translated in Medina & Medina v. Country Pride Foods, Ltd.*, 858 F.2d 817, 824 (1st Cir.1988), should be read as broadening the definition of just cause. There, the court stated that "[o]ne cannot possibly construe the statute in such a way that the dealer would govern—by imposing his conditions—the principal's sales policies or vice versa, with the inevitable loss of financial and legal autonomy of both." *Id.* at 823. Admittedly, the language of the case is suggestive.[7] But although that case reads a "good faith" standard into the statute for the situation where the principal seeks to leave the Puerto Rico market completely, the instant case is a very different situation. Here the principal wants to bypass the dealer by creating parallel dealerships.[8] We read the statutory presumption, created in reaction to *Medina & Medina*, as a message to the courts by the Legislature that this kind of behavior is unacceptable

---

**6.** Even if there had been some sort of quota, defendant would have had the burden of showing the reasonableness of such a quota under the circumstances. According to the 1988 amendments, the principal has the "burden of proof to show the reasonableness of the rule of conduct or of the quota or goal fixed." 10 L.P.R.A. § 278a–1(c).

**7.** *Medina & Medina* could be read as opening Law 75 up to a more liberal interpretation, one which treats the economic interests of both parties equally in all situations. But that would be contrary to the history of the law as an instrument for the protection of local dealers.

**8.** The Supreme Court of Puerto Rico has specifically said, "[t]he Act does not admit the good faith of the principal in the termination of the contract, nor his right to establish his own distribution system or to make adjustments in the system which in good faith he considers necessary to improve his market." *Warner Lambert*, 101 D.P.R. at 400, *translated in* 1 Official Translations at 56. While in a later case, *Marina Industrial Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983), the Court seemed to reopen the issue, the statutory presumption created by the 1988 amendment reestablished that the principal has no *right* to establish his own distribution system, even in good faith.

except in the face of some egregious behavior on the part of the dealer. To read the "good faith" of the principal into the definition of just cause in this case would widen the scope of possible behavior by the principal in a way not contemplated by the statute. Unless the Supreme Court of Puerto Rico explicitly finds the creation of parallel dealerships to be subject to a "good faith" standard we will not do so. Having found that we cannot grant defendant's motion for summary judgment on the issue of just cause, we now move to the issue of damages.

### Damages

■ On the issue of damages, defendant presents facts which show that the plaintiff was not injured as a result of the impairment of the contract by Hon. The ongoing relationship between the parties was not terminated, so plaintiff could continue to receive revenue from the sale of defendant's products. The decline in plaintiff's sales was the result of plaintiff's decision to decrease orders and not of any action by defendant. The fact that plaintiff had ordered $60,000 worth of defendant's products as of October 1989 suggests that plaintiff was confident of a level of sales that was higher than it had projected for the year 1990.[9] Defendant argues that Hon's increased penetration of the market, if anything, will increase plaintiff's sales of Hon products. Given the rapid increase in Hon's sales, from $53,342 in 1986 with Draft Line to $669,490 with its other dealers, it seems reasonable to suggest that Draft Line might benefit from the increased exposure of the public to Hon products. Defendant points out that plaintiff's overall sales, as reflected in their income tax returns, have increased despite the fact that plaintiff decreased its purchases of defendant's products. This suggests that plaintiff's market remains unaltered and its customers have not been stolen by Hon's other dealers. All these facts, while not dispositive, suggest that any inconvenience to plaintiff cannot be recoverable as damages under the statute.

Plaintiff produces absolutely no evidence in its opposition to defendant's motion for summary judgment to support its claim for damages. In its complaint, the plaintiff asserts there were damages, but it never presents any facts to support that assertion. As a court, "[w]e need not ... give credence to 'mere allegations,' or draw inferences where they are implausible or not supported by 'specific facts.'" *Sheinkopf v. Stone*, 927 F.2d at 1259. For this court to construe evidence in favor of plaintiff, it must be given evidence to construe. The defendant has met its burden by negating an essential element of the nonmoving party's claim. The burden has now shifted to the plaintiff to show a genuine issue of material fact. Since all plaintiff has produced are allegations of damage, we find plaintiff's failure to present any evidence in its opposition to defendant's motion for summary judgment results in a failure to raise a genuine issue of material fact.

Plaintiff seems to rely on the fact that 10 L.P.R.A. § 278b(d)[10] will automatically be

---

9. Draft Line's own figures show anticipated purchases of $32,570 for the year of 1990. Since sales are dependent on purchases, Draft Line's potential for profit is, therefore, considerably higher than it expected. Docket Document No. 31, Exhibit 7.

10. § 278b(d) states:

If no just cause exists for the termination of the dealer's contract for detriment to the established relationship, or for the refusal to renew same, the principal shall have executed a tortious act against the dealer and shall indemnify it to the extent of the damages caused him, the amount of such indemnity to be fixed on the basis of the following factors:

(a) the actual value of the amount expended by the dealer in the acquisition and fitting of premises, equipment, installations, furniture and utensils, to the extent that these are not easily and reasonably useful to any other activity in which the dealer is normally engaged;

(b) the cost of the goods, parts, pieces, accessories and utensils that the dealer may have in stock, and from whose sale or exploitation he is unable to benefit;

(c) The good will of the business, or such part thereof attributable to the distribution of the merchandise or to the rendering of the pertinent services, said good will to be determined by taking into consideration the following factors:

(1) number of years the dealer has had charge of the distribution;

applied by the court whenever there is a violation of the Act. But as pointed out in *Marina Industrial, Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64, 90 (1983), *translated in* 14 Official Translations 91, 118 (1983), the factors listed in section 278b are "only guidelines for the fixing of the damages and do not bind the court to automatically award indemnity applying each and every factor." To view any part of section 278b as an automatic provision would be the equivalent of reading a punitive damages provision into the statute, violating the policy of the Puerto Rico Civil Code against punitive damages. *Id.* The purpose of the damage clause is to ensure that the actual damage caused the dealer is compensated: "It is not an indemnification for the breach of a contractual obligation; . . . . Nor is it a compensation of a social nature, . . . . It is rather a compensation for services actually rendered by the agent." *San Juan Mercantile Corporation v. Canadian Transport Co., Ltd.*, 108 D.P.R. 211, 214 (1978), *translated in* 8 Official Translations 218, 221 (1978). The factors in section 278b are used at the court's discretion based upon the specific circumstances of the case and must be proven by the plaintiff. *Marina Industrial, Inc.*, 114 D.P.R. at 64. The plaintiff has presented nothing which the court can use to balance against defendant's assertions that plaintiff has not been harmed by the termination of the exclusive nature of the contract.

Theoretically it is possible that damages could result from the termination of the exclusive aspect of a dealership under section 278b. While there would most likely not be damages under section 278b(a) or (b),[11] because what plaintiff invested to enable it to sell defendant's products would continue to be useful and the continuing relationship would make inventory a gain and not a loss, the other two factors allow for the more abstract damages which are appropriate to this situation. The purpose of clause (d) is to replicate what a dealer would get for the sale of the dealership.[12] Clause (c) compensates the plaintiff for loss of goodwill.[13] These two clauses could be used to show damage by a dealer in this kind of situation. But showing such losses involves complicated proof problems due to their abstract nature, and plaintiffs must be cognizant of the importance of showing actual damage. Since the plaintiff establishes no material facts here which could lead a reasonable jury to conclude that there were any damages, this court grants summary judgment on behalf of the defendant for plaintiff's failure to show a triable issue of damages under section 278.

We must also grant summary judgment against plaintiff for its negligence claim under 31 L.P.R.A. § 5141, since a showing of damage is also essential to that cause of action.[14] While damages under Law 75 can be supplemented by other provisions in the law, *Computec Systems Corp. v. General Automation, Inc.*, 599 F.Supp. 819, 826

(2) actual volume of the distribution of the merchandise or the rendering of the pertinent services and the proportion it represents in the dealer's business;
(3) proportion of the Puerto Rican market said volume represents
(4) any other factor that may help establish equitably the amount of said good will;
(d) the amount of the profit obtained in the distribution of the merchandise or in the rendering of the services, as the case may be, during the last five years, or if less than five, five times the average of the annual profit obtained during the last years, whatever they may be.

**11.** See n. 6 above.

**12.** Salvador Antonetti Zequeira, *La Medida de Los Daños Bajo La Ley 75,* 58 U.P.R.L.Rev. 227, 246 (1989).

**13.** The factors to be considered in calculating this amount are: "(1) number of years the dealer has had charge of the distribution; (2) actual volume of the distribution of the merchandise or the rendering of the pertinent services and the proportion it represents in the dealer's business; (3) proportion of the Puerto Rican market said volume represents; (4) any other factor that may help establish equitably the amount of said goodwill."

**14.** Act 1802 of the Civil Code, 31 L.P.R.A. § 5141, is the general negligence statute of Puerto Rico law. It states that whoever causes damage by reason of his negligent acts or omissions, must pay for the damage so caused.

(D.P.R.1984), "[u]nless the damage claimed is proven to have in fact existed and to have been related to the injurious act, no compensation can be awarded, for Puerto Rico does not sanction punitive damages." *Id.* at 827. Since plaintiff has shown no existing issue of damages, summary judgment against the plaintiff under 31 L.P.R.A. § 5141, the general negligence statute, is granted.

### Conclusion

The court grants defendant's motion for summary judgment because the plaintiff has failed to show there is a genuine issue of material fact concerning damages as an essential element of the claim.

IT IS SO ORDERED.