<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-2236

                    A.M. CAPEN'S CO., INC.,
                      Plaintiff, Appellee,

                               v.

          AMERICAN TRADING AND PRODUCTION CORPORATION,
         BLAS ROSSY-ASENCIO AND RAFAELA FULANA DE TAL,
                    Defendants, Appellants.

                      ____________________

No. 98-2237

                    A.M. CAPEN'S CO., INC.,
                     Plaintiff, Appellant,

                               v.

          AMERICAN TRADING AND PRODUCTION CORPORATION,
         BLAS ROSSY-ASENCIO AND RAFAELA FULANA DE TAL,
                     Defendants, Appellees.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

        [Hon. Daniel R. Domnguez, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,
                                 
                 Wallace, Senior Circuit Judge,

                   and Lynch, Circuit Judge.

                     _____________________

   Jos Enrique Coln-Santana for appellants American Trading and
Production Corporation, Blas Rossy-Asencio, Rafaela Gonzlez-Ruiz,
and their conjugal partnership.
   Fernando L. Gallardo, with whom Woods & Woods and Philip E.
Roberts were on brief, for appellee A.M. Capen's Co., Inc.

                      ____________________

                        February 8, 2000
                      ____________________

 TORRUELLA, Chief Judge.  For the second time, this Court
is asked to determine whether the Puerto Rico Dealers' Act of 1964,
10 L.P.R.A.  278a-d (1994) ("Act 75"), applies to the
circumstances of this case.  On appeal from entry of a preliminary
injunction, a prior panel of this Court reached an initial
determination that the claims of plaintiff-appellee, A.M. Capen's
Co., Inc., against defendant-appellant, American Trading &
Production Corp. ("ATAPCO"), were likely to be resolved in Capen's
favor under the laws of Puerto Rico, specifically Act 75.  See
generally A.M. Capen's Co. v. American Trading & Prod. Corp., 74
F.3d 317 (1st Cir. 1996).  However, on appeal from judgment below
for Capen's, this Court must again consider whether Capen's is a
dealer under Act 75.  For the reasons further discussed in this
opinion, we reverse the decision of the district court.
 As we observed in our recent opinion, Triangle Trading
Co. v. Robroy Industries, Inc., No. 98-2366, slip op. at 2 (1st
Cir. Dec. 29, 1999), there is much case law carving out the scope
of Puerto Rico's dealership act.  In order to honor the legislative
intent of Act 75, the Puerto Rico and federal courts have taken
steps to restrict the definition of who is a "dealer" within the
broad framework of section 278(a).  See id. at 7-9.  We now take
one more step down that path and hold that under the facts of this
case, appellee fails to qualify for the remedies of the statute
because it did not operate as a "dealer" in Puerto Rico.

                               I.
 The undisputed facts underlying this action are as
follows.  Capen's, a New Jersey corporation with its principal
place of business in that state, entered into an agreement with
ATAPCO's predecessor to be the exclusive distributor of Globe-Weiss
and Steelmaster office products in Puerto Rico, along with thirty-
seven other countries in the Caribbean and Central and South
America.  The arrangement continued after ATAPCO, whose principal
place of business is Missouri, took over.  However, the parties
never signed a formal contract because they could not agree on
choice-of-law and forum-selection clauses.   
 The negotiations took place in Missouri and New Jersey.
Pursuant to the agreement, ATAPCO's products were shipped to
Capen's in New Jersey.  Capen's would generally take orders from
its Puerto Rican customers in New Jersey via telephone or fax,
although an agent would actually travel to Puerto Rico two to three
times a year for that purpose.  Capen's would then ship the
products directly to its customers in Puerto Rico and send bills
from New Jersey to Puerto Rico.  Capen's did not advertise in
Puerto Rico, nor did it maintain a warehouse, showroom, inventory,
employees, office, address, or telephone number in Puerto Rico.  
Likewise, Capen's is not qualified to do business in Puerto Rico.  
See A.M. Capen's Co. v. American Trading & Prod. Corp., 973 F.
Supp. 247, 253-55 (D.P.R. 1997).
 In December 1993, ATAPCO terminated the exclusive aspect
of the dealership, and it authorized Blas Rossy-Asencio as a sales
representative for Puerto Rico effective January 1994.  The trial
court entered a preliminary injunction in favor of Capen's on
June 16, 1995, which this Court affirmed.  See A.M. Capen's, 74
F.3d at 319.  In July 1997, the district court resolved Capen's
pending cross-motion for partial summary judgment on liability.  
First, the court observed that ATAPCO had failed to provide
additional evidence on Capen's dealership status within the
established time frame; consequently, the court concluded that
there was no reason to reconsider its original finding, based on
the same record and affirmed by the court of appeals, that Act 75
covered Capen's dealership.  See A.M. Capen's, 973 F. Supp. at 257-
58.  Then, based on the material facts it deemed admitted, the
court found Act 75 liability against ATAPCO as a matter of law.  
See id. at 260.  Damages were set after a bench trial, by opinion
and order entered on March 31, 1998.  See A.M. Capen's Co. v.
American Trading & Prod. Corp., 12 F. Supp. 2d 222, 224-30 (D.P.R.
1998).

                              II.  
 Summary judgment is only appropriate if there is no
genuine issue as to any material fact and the moving party is
entitled to judgment as a matter of law.  See Fed. R. Civ. P.
56(c).  We normally review the district court's summary judgment de
novo, "viewing 'the entire record in the light most hospitable to
the party opposing summary judgment, indulging all reasonable
inferences in that party's favor.'"  Euromotion, Inc. v. BMW of N.
Am., Inc., 136 F.3d 866, 869 (1st Cir. 1998) (quoting Griggs-Ryan
v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)); see also Morris v.
Government Dev. Bank, 27 F.3d 746, 748 (1st Cir. 1994).  However,
in this case, the district court properly admitted the uncontested
facts submitted by the plaintiff-appellant when ATAPCO failed to
comply with the local rules and oppose the motion in the
appropriate form.  See A.M. Capen's, 973 F. Supp. at 256 (citing
Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922,
930-31 (1st Cir. 1983).  Because we limit our review to "the record
as it stood before the district court at the time of its ruling,"
J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.,
76 F.3d 1245, 1250 (1st Cir. 1996) (citing Voutour v. Vitale, 761
F.2d 812, 817 (1st Cir. 1985)), there are no facts in dispute.
 Consequently, the only matter before the Court is the
applicability of Act 75, a matter we previously considered and
provisionally affirmed.  ATAPCO argues that we are not bound by our
earlier decision which was rendered as a preliminary opinion for
the purposes of reviewing an injunction.  In this case, because the
record was fully developed before the first panel, there is a
tension between the limited binding authority of a decision
regarding a preliminary injunction and the law of the case
doctrine.  See Cohen v. Brown University, 101 F.3d 155, 167 (1st
Cir. 1996) (citing 1B James W. Moore et al., Moore's Federal
Practice  0.404[1] (2d ed. 1993)), cert. denied, 520 U.S. 1186
(1997); see also Ackerley Communications of Mass., Inc. v. City of
Cambridge, 135 F.3d 210, 213-15 (1st Cir. 1998) (implying that
legal opinion was law of case in preliminary injunction setting
where facts were undisputed).  However, the law of the case
doctrine only directs our discretion; it does not limit our power.  
See Arizona v. California, 460 U.S. 605, 618 (1983); see also
Cochran v. M & M Transp. Co., 110 F.2d 519, 521-22 (1st Cir. 1940)
(quoting Messinger v. Anderson, 225 U.S. 436, 444 (1912)).  Two
traditional considerations weigh in favor of reopening our initial
determination.  First, as we acknowledged in our prior opinion,
"'conclusions as to the merits of the issues presented on
preliminary injunction are to be understood as statements of
probable outcomes,' rather than as comprising the law of the case."  
74 F.3d at 322 (quoting Narragansett Indian Tribe v. Guilbert, 934
F.2d 4, 6 (1st Cir. 1991)).  Thus, it is implicit that "a party
losing the battle on likelihood of success may nonetheless win the
war at a succeeding trial on the merits."  Jimnez Fuentes v.
Torres Gaztambide, 807 F.2d 236, 238 (1st Cir. 1986).  Second, we
review an award of a preliminary injunction only for abuse of
discretion.  See A.M. Capen's, 74 F.3d at 319.  Therefore, the
scope of review given a case that comes to us in the posture of a
preliminary injunction is more deferential than that given to one
which comes to us on appeal from final judgment.  See,
e.g., Rodrguez-Burgos v. Electric Energy Auth., 853 F.2d 31, 37
(1st Cir. 1988) (considering case upholding a permanent
injunction); Goyco de Maldonado v. Rivera, 849 F.2d 683, 686 (1st
Cir. 1988) (distinguishing case heard on appeal from issuance of
interim injunction); Rosario Nevrez v. Torres Gaztambide, 820 F.2d
525, 527 (1st Cir. 1987) (noting that review is limited to
plaintiff's likelihood of success, and not a "clear-cut ruling," on
the merits).
                              III.
 Thus, we turn to Capen's status as a dealer under Act 75.  
In departing from the legal determination of our colleagues in this
circuit, we take into account that the initial decision was not
intended to be binding, and that the court did not fully
contemplate the meaning of dealer under the Act, but rather
considered the Act only in the context of Puerto Rico's interest in
the action.  See A.M. Capen's, 74 F.3d at 321-22.
 In a statutory construction case, we begin with the
language of the statute, and only if the language is ambiguous or
leads to an unreasonable interpretation do we turn to the
legislative history and other aids.  The words that are not defined
within the statute are given their ordinary meaning, with all due
consideration to the context.  See Brady v. Credit Recovery Co.,
160 F.3d 64, 66 (1st Cir. 1998); Grunbeck v. Dime Sav. Bank, 74
F.3d 331, 336 (1st Cir. 1996); Riva v. Massachusetts, 61 F.3d 1003,
1007 (1st Cir. 1995).  
 Act 75 defines a dealer as:  "a person actually
interested in a dealer's contract because of his having effectively
in his charge in Puerto Rico the distribution, agency, concession
or representation of a given merchandise or service."  10 L.P.R.A.
278(a) (emphasis added).  Although the underscored text does not
explicitly "require[] a dealer to be a resident of Puerto Rico, to
be authorized to do business in the Commonwealth, or to have a
place of business such as an official showroom or warehouse on the
Island," as do the comparable statutes in New Jersey and Missouri,  
A.M. Capen's, 74 F.3d at 322, it does strongly suggest that the
dealer must operate in Puerto Rico under similar requirements.  The
alternative, that the phrase could simply refer to a company with
a contractual right to distribute in Puerto Rico, regardless of the
locale of the bulk of its business, is a less likely reading.  
First, under such circumstances, Puerto Rico would have little or
no interest in providing the dealer with an additional remedy for
the breach of contract, and second, Puerto Rico would face
significant legal and practical problems regulating conduct outside
its borders.
 While we gain no additional insight from the definition
of a dealer's contract, the legislative history confirms an
interpretation of "in Puerto Rico" that incorporates requirements
that an Act 75 dealer be located in, be a resident of, or be
authorized to do business in Puerto Rico.  The statement of
legislative purpose for Law 75 reads:
   "The Commonwealth of Puerto Rico cannot remain
 indifferent to the growing number of cases in
 which domestic and foreign enterprises,
 without just cause, eliminate their dealers
 . . . as soon as these have created a
 favorable market and without taking into
 account their legitimate concerns.

   The Legislative Assembly of Puerto Rico
 declares that the reasonable stability in the
 dealer's relationship in Puerto Rico is vital
 to the general economy of the country, to the
 public interest and to the general welfare
 . . . ."

Roberco, 122 D.P.R. at 121-22, 22 Offic. Trans. at 113-14 (emphasis
added) (quoting 18-3 Diario de Sesiones 1531 (1954)).  In addition,
"the Industry and Commerce Committee submitted a report
recommending the bill's approval as a means to tackle the problem
of termination of a dealer's contract without just cause, in
prejudice to the local dealer, who 'has created a favorable market
for the products, and . . . has effectively assumed his
responsibilities.'"  Id. (quoting 18-3 Diario de Sesiones 1531).
 The legislative history clearly focuses on the problems
faced by dealers in Puerto Rico who are terminated once they have
invested in and created a favorable market for a principal's
product.  See Draft-Line Corp. v. Hon Co., 781 F. Supp. 841, 843-44
(D.P.R. 1991), aff'd, 983 F.2d 1046 (1st Cir. 1993); see also
Franceschini, 591 F. Supp. at 415 ("The scant legislative history
of the statute refers solely to the problems faced by dealers in
Puerto Rico who created a favorable market . . . ."); Roberco, 122
D.P.R. at 121-22, 22 Offic. Trans. at 113-14 (discussing
legislative intent to protect local dealers).  The courts that have
interpreted the statute and its legislative history uniformly
conclude that the statute was enacted to prevent "economic
exploitation of local dealers."  A.M. Capen's, 74 F.3d at 321
(quoting Draft-Line, 781 F. Supp. at 844); see also Roberco, 122
D.P.R. at 121, 22 Offic. Trans. at 113 ("Act 75 was created to
avoid the harm resulting from the practice of some manufacturers
who arbitrarily break with local dealers"); J. Soler Motors, Inc.
v. Kaiser Jeep Int'l Corp., 108 D.P.R. 134, 8 P.R. Offic. Trans.
138, 143 (1978) (Act 75 "has the purpose of protecting the Puerto
Rican intermediaries").  Because there is no evidence to the
contrary, we similarly ascertain that the legislature sought to
protect the interests of commercial distributors working in Puerto
Rico.  See A.M. Capen's, 74 F.3d at 321 (citing Ballester Hermanos,
Inc. v. Campbell Soup Co., 797 F. Supp. 103, 106 (D.P.R. 1992)).
 Based on the facts before us, we cannot conclude that
Capen's operates "in Puerto Rico" for purposes of Act 75.  Capen's
presence in Puerto Rico is almost nonexistent; Puerto Rico is
merely one of the destination markets for the ATAPCO goods that it
distributes.  Capen's has no employees, no office space or
warehouses, and no assets in Puerto Rico.  Other than the two or
three times a year that an agent visits Puerto Rico to take orders
directly, all other contact and orders are made through New Jersey,
where Capen's maintains a place of business and is incorporated.
                           CONCLUSION
 After careful consideration and review, based on the
parties' limited connection to Puerto Rico, we conclude that Act 75
should not apply to this case.  We therefore reverse and remand for
proceedings consistent with this opinion.

</body>

</html>