MARK H. PATE ET AL., demandantes, *v.* UNITED STATES OF AMERICA, demandado.

*Número:* CE-87-656    *Resuelto:* 4 de marzo de 1988

*Néctor Robles Abraham*, abogado de los demandantes; *Wanda Rubianes Collazo, Fiscal Federal Auxiliar*, abogada del demandado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

La Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico acude ante nos mediante Procedimiento de Certificación y formula la interrogante siguiente: "¿Tienen los aquí demandantes, padres de un infante fallecido, el derecho a ejercer válidamente una causa de acción en nombre de su hijo por *el menoscabo de su potencial de generar ingresos*?" (Énfasis y traducción nuestra.)(1) Expongamos una síntesis de los hechos *no contradichos* que originan esta incógnita.

I

El 23 de septiembre de 1984, Janie Marie Pate fue admitida en el Hospital de la Base Naval de Roosevelt Roads de-

---

(1) El texto original dispone: "Whether plaintiffs herein, the mother and father of a deceased infant, can validly claim the cause of action of 'diminished potential to generate income' on behalf of their deceased son." Civ. No. 86-1214 PG.

bido a una ruptura espontánea de las membranas de la placenta. Al día siguiente fue transferida a la sala de cuidado intensivo neonatal del Centro Médico de Río Piedras.

El 4 de octubre nació prematuramente Mark Pate, Jr. Pesaba escasamente tres (3) libras y once (11) onzas. Su delicada condición requirió que se mantuviera hospitalizado hasta el 20 del mismo mes, fecha en que fue dado de alta. Al otro día, 21 de octubre, fue alimentado por su madre, siguiendo las órdenes médicas, con una solución concentrada de fórmula para infantes diluida en un suero pediátrico.

Alrededor de las 4:20 A.M. del día siguiente, los esposos Pate lo llevaron a la Sala de Emergencia del Hospital Naval. Tenía diarreas, se mostraba pálido y estaba deshidratado. El médico de turno recomendó trasladarlo al Centro Médico, pero a instancias de sus preocupados padres fue admitido allí con un diagnóstico de "prematuro, pobre aumento de peso". Aun así, no se ordenaron pruebas de laboratorio para corroborar dicho diagnóstico. Lamentablemente, a las 6:30 P.M. el menor Mark Pate, Jr., murió víctima de una *deshidratación severa*.

En su demanda ante el foro federal, sus progenitores, los cónyuges Pate, alegaron que de haberse ordenado los exámenes de rigor con toda probabilidad se hubiese llegado al diagnóstico correcto y la muerte del niño se hubiese evitado. El gobierno federal aceptó la negligencia, pero negó que procediera indemnización por el menoscabo del potencial de generar ingresos.

## II

La cuestión medular planteada exige que reexaminemos, a modo comparativo, la característica diferenciadora que doctrinariamente nutre los conceptos de *lucro cesante* y *el menoscabo del potencial de generar ingresos*.

■■ El primero dispone la "indemnización concedida por concepto de lucro cesante . . . como consecuencia de lesiones, enfermedad, muerte y, en ciertos casos, incumplimiento de contrato. *No deberá confundirse la indemnización correspondiente al lucro cesante con la que se concede como indemnización por lesiones, enfermedad o muerte.* Las compensaciones correspondientes a estos últimos elementos de daño son distintas y separadas de la indemnización correspondiente al lucro cesante". (Énfasis suplido.) H. Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico,* 2da ed. rev., San Juan, Pubs. J.T.S., 1986, Vol. I, pág. 474. Véase, también, *Publio Díaz* v. *E.L.A.,* 106 D.P.R. 854, 869–870 (1978).

■ Bajo esta óptica, el actor debe probar ingresos previos. Aunque no es necesario demostrar con absoluta certeza matemática la ganancia futura frustrada, sí deberá producirse prueba sobre la razonable probabilidad de haber continuado obteniendo dicho ingreso. *Velázquez* v. *Ponce Asphalt,* 113 D.P.R. 39, 48 (1982).

■ En lo relativo a la transmisibilidad de la acción por lucro cesante, nuestra doctrina es clara y consistente. "El lucro cesante que se produce con motivo de la muerte del causante con motivo de un acto ilegal de un tercero se transmite o no en la medida en que el fallecido tuviera personas que dependieran de él al momento de su muerte. Los dependientes pueden o no ser los herederos legítimos de la víctima de manera que el causante puede dejar hijos y nietos, siendo estos últimos los acreedores a la porción fijada en concepto de lucro cesante si pueden demostrar haber sufrido una interrupción real y efectiva de ingreso[s] provenientes del patrimonio del causante." E. González Tejera, *Derecho Sucesorio Puertorriqueño,* San Juan, Ed. Ramallo, 1983, Vol. I, págs. 260–261.

Esta trayectoria judicial encuentra eco desde *Vda. de Valentín* v. *ELA*, 84 D.P.R. 112, 115 n. 2 (1961). Allí expresamos la naturaleza eminentemente "especulativa" y conjetural de este tipo de compensación. En casos posteriores, la partida de lucro cesante sólo se ha concedido cuando ha existido una relación de dependencia. *Vda. de Seraballs* v. *Abella Hernández*, 90 D.P.R. 368 (1964); *Rodríguez* v. *Ponce Cement Corp.*, 98 D.P.R. 201 (1969); *Vda. de Delgado* v. *Boston Ins. Co.*, 99 D.P.R. 714 (1971); *Sánchez* v. *Liberty Mutual Ins. Co.*, 100 D.P.R. 1 (1971); *Colón* v. *Municipio de Orocovis*, 100 D.P.R. 1009 (1972); *Zeno Molina* v. *Vázquez Rosario*, 106 D.P.R. 324 (1977); *Publio Díaz* v. *E.L.A.*, supra.

Finalmente, en *Zurkowsky* v. *Honeywell, Inc.*, 112 D.P.R. 271, 275 (1982), al reiterar nuestro rechazo doctrinal a la compensación por pérdida de herencia futura como daño patrimonial, señalamos enfáticamente que "[e]l concepto de lucro cesante está *inexorablemente vinculado al de dependencia económica al momento de la muerte*. Tales dependientes tienen una causa de acción por su condición de recipientes de unos ingresos que se ven interrumpidos". (Énfasis suplido y escolio omitido.)

En resumen, en nuestra jurisdicción, el lucro cesante de un causante no forma parte del patrimonio transmisible a sus herederos. Exploremos, pues, si igual solución procede *en cuanto al menoscabo del potencial de generar ingresos*.

### III

En *Ruiz Santiago* v. *E.L.A.*, 116 D.P.R. 306 (1985), por primera ocasión, reconocimos expresamente la posibilidad de compensar a un menor por la pérdida de ingresos futuros en acciones de daños y perjuicios. Conceptualmente

denominamos esta modalidad del lucro cesante como el *menoscabo del potencial de generar ingresos*. De esta manera, allí lo distinguimos del lucro cesante que "aprisiona la imaginación judicial al *requisito de ingreso previo derivado de trabajo*" como característica diferenciadora. (Énfasis suplido.) Íd., pág. 311.

En esa ocasión nos pronunciamos en el sentido de que las complicaciones inherentes que conllevaban la cuantificación y determinación de una compensación adecuada en tales instancias, no podían servir de obstáculo en nuestra principal función de hacer cumplida justicia. Después de todo, "aun tratándose de un menor, se ha destruido como ser humano su potencial de ingresos". *Ruiz Santiago* v. *E.L.A.*, supra, pág. 314. Indicamos que este tipo de daño "es una lesión identificable, con marcada probabilidad". Íd., pág. 317. Para fines de moldear el diseño remedial, enumeramos varios factores que deberían tomarse en consideración al fijarse la cuantía. A tal efecto, en "esa función judicial estimativa y ante la ausencia de un historial previo de actividad retribuida, deben tomarse en cuenta el [*status*] del menor al momento de la incapacidad y su proyección futura razonable. Son factores apropiados, tales como: tipo de núcleo familiar, grado de estabilidad del hogar, edad, condición de salud física y mental previa, inteligencia, su disposición, educación alcanzada, hábitos de estudio, habilidad en la escuela, talento, intereses específicos, 'entretenimientos y destrezas desarrolladas, grado de madurez y experiencia'. . . . En cuanto a sus proyecciones, es pertinent[e] el examen de aquellas otras guías susceptibles de indicar mejores oportunidades para alcanzar destrezas o educación más avanzada. . . . Finalmente, las leyes de salario mínimo, los promedios de ingreso en las variadas ocupaciones o profesiones prevalecientes, y los sistemas de retiro o la edad promedio de retiro

forman parte del cuadro total". (Citas omitidas.) *Ruiz Santiago* v. *E.L.A.*, supra, pág. 318.

En *Rodríguez Cancel* v. *A.E.E.*, 116 D.P.R. 443, 458 (1985), reiteramos esta doctrina y utilizamos los factores antes enumerados para adjudicar los daños de este tipo.

## IV

Lo expuesto nos provee la clave para la solución de este recurso. La única diferencia detectable entre lucro cesante y *el menoscabo del potencial de generar ingresos* —existencia o no de *ingresos previos*— no justifica variar el enfoque en cuanto al aspecto sucesoral. Debemos resolver de igual manera, pues uno se deriva del otro. Y como expresamos anteriormente —citando la obra del profesor González Tejera y *Zurkowsky* v. *Honeywell*, supra— la transmisibilidad de esta causa de acción está inexorablemente atada a la existencia de una condición de dependencia. Ausente esa circunstancia, el solo nexo familiar no es suficiente para admitir que puede incoarse una causa de acción *por menoscabo del potencial de generar ingresos* por los herederos *no dependientes*.

Se dictará sentencia que conteste en la negativa la presente certificación.

El Juez Asociado Señor Hernández Denton disiente sin opinión escrita.