**TELENETWORKS, INC., Plaintiff**

v.

**MOTOROLA UNIVERSAL DATA SYSTEMS, INC., et al., Defendants.**

**Civ. No. 94–2445(PG).**

United States District Court, D. Puerto Rico.

Nov. 28, 1995.

Zuleika Llovet, San Juan, P.R., for Plaintiff.

John F. Malley, III, McConnell Valdés, San Juan, P.R., for Defendants.

## OPINION AND ORDER

### PEREZ–GIMENEZ, District Judge.

The issue before the Court arose during efforts to finalize the pretrial order in this case. Defendant objects to plaintiff's intention to base the calculation for "lost profits" on the sales made by defendant *after* the termination of the dealership arrangement between the parties.[1] Motorola's objection to the proposal is two-fold. First, procedurally, it asserts that it was not provided adequate notice during the discovery process. Second, and more fundamentally, defendant argues that Law 75 does not provide for the award of such damages. This question of Puerto Rico law has not been addressed by the Puerto Rico Supreme Court (though it has arisen before in this district). Because I find that Motorola's substantive contention is correct, I will not address its procedural grievance.

Law 75 provides for damages when a principal has, without "just cause," terminated or refused to renew a dealership contract. The principal's conduct in such circumstances is deemed by the law a "tortious act against the dealer," and the law provides for the indemnification of the dealer "to the extent of the damages caused him." 10 L.P.R.A. § 278b.

Section 278b identifies four primary factors in assessing the dealer's damages. The first three are: (a) the cost and value of fitting the dealer's premises to service the principal's product; (b) the cost of the principal's product the dealer has been "stuck with" as a result of the unjustly terminated relationship, and (c) the value of the "good will" accumulated by the distributor (the calculation of which is again provided for by a four part analysis). The fourth factor pertains to lost profits. It provides that the dealer may receive as damages

> the amount of the profit obtained in the distribution of the merchandise or in the rendering of the services, as the case may be, during the last five years, or if less than five, five times the average of the annual profit obtained during the last years, whatever they may be.

10 L.P.R.A. § 278b(d).[2]

Although the law identifies four factors to consider in awarding damages in a Law 75 case, the Puerto Rico Supreme Court has held that these factors should be flexibly applied:

> [The factors] are only guidelines for the fixing of the damages and do not bind the court to automatically award indemnity applying each and every factor. The court has the discretion to apply the factors listed in the light of the specific circumstances of each case, pursuant to the evidence presented.

*Marina Industrial,* 114 D.P.R. at 90 (official translation). The federal district court for the District of Puerto Rico, which, through its diversity jurisdiction has been a major forum for Law 75 cases, has faithfully followed *Marina Industrial's* guidance in this regard.[3] Thus, a Law 75 case may also be a

---

1. The facts surrounding this relationship are bitterly disputed. Suffice it to say that from 1985 until sometime in 1993, Telenetworks distributed Motorola products in Puerto Rico. Telenetworks claims that its distributorship was terminated without "just cause," and seeks damages under Puerto Rico's "Law 75," 10 L.P.R.A. § 278.

2. The Puerto Rico Supreme Court has held that the "lost profits" award of § 278b(d) is to be granted the plaintiff *in addition* to the "good will" award of § 278b(c). *Marina Industrial, Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64, 89 (1983). This is so even though the economic concept of "good will" ordinarily includes a component reflecting the present value of lost future profits. *See* Salvador Antonetti Zequeira, *La Medida de los Daños Bajo la Ley 75,* 58 Rev.Jur.U.P.R. 227, 238–45.

3. *See, e.g., Computec Systems Corp. v. General Automation, Inc.,* 599 F.Supp. 819, 826 (D.P.R. 1984) ("We find nothing ... to suggest that the list of damage factors be read as exclusive of all others"); *Ballester Hermanos, Inc. v. Campbell Soup Co.,* 1993 WL 269656, *3 (D.P.R.) ("The factors listed in section 278b must ... be used at the court's discretion based upon the specific circumstances"); *Homedical Inc. v. Sarns/3M Health Care, Inc.,* 875 F.Supp. 952, 953 (D.P.R. 1995) ("To be sure, plaintiff's recovery is not necessarily limited to the types of damages enu-

vehicle for awarding "[d]amages arising from breach of contract as well as those arising from the negligent performance of any type of obligation...." *Computec Systems,* 599 F.Supp. at 826.

However, it is one thing to say that section 278b's list of remedies is not exclusive; it is quite another to assert that a Court may fashion a new procedure to calculate a remedy when the law already specifically provides a mechanism for doing so. The text of section 278b(d) scrupulously describes the method to determine lost profits. Absent compelling circumstances, I see no reason to judicially amend it.[4] Plaintiff will, therefore, not be permitted to introduce evidence of post-termination sales earned by Motorola to prove lost profits.

This position is not premised on a mechanical application of the *expressio unius* doctrine, but rather is justified by the policy goals of Law 75 itself. In this regard, quoting the analysis of a well known commentator, the Puerto Rico Supreme Court has characterized the lost profits provision of Law 75 as follows:

> Upon termination of the agent's contract ... one of two things may happen: that the clients remain with the represented company, this being a loss to the agent; or that they remain loyal to the agent, who shall continue to sell to them either on his own or from some new company. If the former happens, it seems fair to compensate the agent for the loss of the income expected from the operations with a clientele won over by him.

*San Juan Mercantile,* 108 D.P.R. at 216 (quoting Véanse Garrigues: III *Tratado de Derecho Mercantil* § 1 at 576 (1963)).

The lost profits calculation required by section 278b(d) is, admittedly, a rigid one.

But this rigidity cuts both ways. The law prevents an agent from benefiting from an upswing in sales post-termination. On the other hand, it will not reduce the award "regardless of whether, as a consequence of the termination, [the agent] attains new lines or increases its profitability on other retained lines." *Ballester Hermanos,* 1993 WL 269656 at *7.

The rationale for this rigidity flows naturally from the primary purpose of Law 75: to provide "compensation for services actually rendered by the agent." *San Juan Mercantile, supra.* Thus, absent a compelling showing otherwise, it is speculative, at best, to suggest that the profits a principal earned post-termination are equal to the profits an agent would have earned but—for the terminated agreement. Two other judges in this district have reached the same conclusion. *See Homedical,* 875 F.Supp. at 954 (Casellas, J.); *Ballester Hermanos, supra* (Pieras, J.). I am in accord.

The Puerto Rico legislature has determined that the proper method for determining lost profits in a Law 75 case requires a retrospective analysis of the agent's pre-termination earnings.[5] I will not second guess the legislature. Therefore, defendant's objection is well taken, and paragraph A.2. of plaintiff's statement of damages shall be stricken from the Pretrial Order.

**IT IS SO ORDERED.**

---

merated in section 278b. The factors listed act only as guidelines").

**4.** The *Computec Systems* court encountered such a circumstance because the distributorship there was terminated before the plaintiff had the opportunity to accumulate any profits whatsoever. Nonetheless, "lost profits" were denied because of the particular facts of the case. *Computec Systems,* 599 F.Supp. at 829. Here there is no difficulty applying the formula from section 278b(d). Therefore, the factors which led the

*Computec Systems* court to consider criteria other than the formula from section 278b(d) are not present.

**5.** Of course, profits accumulated by the principal post-termination *may* be evidence of the good will generated by the local distributor. *See* § 278b(c)(4) (permitting the court to "tak[e] into consideration ... any ... factor that may help establish equitably the amount of said good will"). However, the plaintiff has not so argued here.