CASAS OFFICE MACHINES, INC., Plaintiff,

v.

MITA COPYSTAR AMERICA, INC., Defendant.

Civil No. 91–1292 (GG).

United States District Court, D. Puerto Rico.

Feb. 12, 1997.

Sanchez Betances & Sifre, Luis A. Melendez, San Juan, PR, for Plaintiff.

Rodriguez & Casellas, Ricardo F. Casellas, San Juan, PR, for Defendant.

## OPINION AND ORDER

GIERBOLINI, Senior District Judge.

Pending before this court is defendant Mita Copystar America, Inc.'s "Motion *in Limine*" (**Docket entry # 275**).[1] Since we know the parties' penchant for the baroque, we will state our rulings as succinctly as possible.

### ISSUES TO BE TRIED

On September 4, 1996 we entered partial judgment dismissing Caguas and Oficentro with prejudice and clarifying that the causes of action for tortious interference and contract in prejudice of a third party were not available against Mita. (**Docket entry # 310 & 316**). **See,** Antonetti, Salvador, *La Medida de los Daños Bajo la Ley 75,* 58 Rev.Jur. U.P.R. 233–35 (1989). In short, we found that the only remaining claims were those predicated under Law No. 75 which encompass Mita's alleged acts of impairment, namely, allowing U.S. dealers to sell products to unauthorized dealers in Puerto Rico (intraband competition) and designating Oficentro and Caguas as parallel dealers in the

---

1. The issues regarding pending discovery will be disposed of in a separate order.

exclusive area of Casas. See, 10 L.P.R.A. §§ 278a, 278a–1(b); General Office Products v. Gussco Manufacturing, Inc., 666 F.Supp. 328, 331–32 (D.P.R.1987); Draft–Line Corp. v. Hon Co., 781 F.Supp. 841, 844 (D.P.R. 1991).

## WAIVER OF AFFIRMATIVE DEFENSES

Mita asserts that its liability should be limited to those acts related to the 1989 Distribution Agreement because any prior acts were released by Casas when it signed the "Stipulation and General Release Agreement" (the Release Agreement) of March 31, 1989.[2] Casas opposes arguing that Mita waived the defenses of release and res judicata by failing to timely raise them, that the allegations in the complaint were intended to encompass all the wrongful acts from 1983 to the present, and that the pleadings must be liberally interpreted in its favor.

 Affirmative defenses must be pleaded in the answer in order to give the opposing party notice of the same and a chance to develop evidence and offer arguments to controvert them. Failure to plead such defenses may result in their waiver and exclusion from the case. Rule 8(c); Wolf v. Reliance Std. Life Ins. Co., 71 F.3d 444, 449–50 (1st Cir.1995); Conjugal Partnership v. Conjugal Partnership, 22 F.3d 391, 400 (1st Cir.1994); Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1226 (1st Cir.1994). However, failure to raise an affirmative defense by responsive pleading does not always result in waiver. Moore v. Coffey, 992 F.2d 1439, 1445 (6th Cir.1993). If a plaintiff receives notice of the defense by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice. Id., (citing Blonder–Tongue Lab., Inc. v. Univ. of Illinois Foundation, 402 U.S. 313, 350, 91 S.Ct. 1434, 1453–54, 28 L.Ed.2d 788 (1971)). Hence, 'an inquiring court must examine the totality of the circumstances and make a practical commonsense assessment about whether Rule 8(c)'s core purpose– to act as a safeguard against surprise and unfair preju-

dice– has been vindicated". Wolf, at 450 (citing Williams v. Ashland, 45 F.3d 588 at 593 (1st Cir.1995)).

 The allegations in the original and subsequent amended complaints do not reveal Casas' proffered intention to seek redress for Mita's acts prior to the 1989 Distribution Agreement. On the contrary, Casas' recount of the relevant facts commences with the genesis of their business relation up to the 1988 state action and the agreement to settle their differences. The statement of facts then continues with the events that followed the renegotiation of their contractual relationship in April 1989 up to the designation of the new distributors in 1990. See, Docket entry # 80A. Casas always refers to Caguas and Oficentro as the new distributors and never makes reference nor alleges that, prior to their designation as such, they engaged in any type of wrongful acts with Mita. Therefore, not even the most expansive interpretation of the complaint could lead us to conclude that it gave notice to Mita that the claims were aimed at including acts prior to 1989. It would then be unjust to require Mita to assert defenses against unasserted claims.

Moreover, the "chronology of the case speaks volumes", Correa v. Hospital San Francisco, 69 F.3d 1184, 1194–95 (1st Cir. 1995), about the timeliness of Mita's assertion of the defenses of release and res judicata. The first discovery petition on record, where Casas made a request to obtain evidence of acts prior to 1989 was submitted to Mita three months after defendant answered the last amended complaint. Docket entry # 130, Exhibits 1 & 3. Mita objected said discovery request on grounds of irrelevancy to the issues presented in the complaint. Id., Exhibits 2 & 4; Docket entry # 131. Casas opposed Mita's objections by stating that the information was relevant because the acts prior to the 1989 Distribution Agreement were part of the damages it had suffered. The Magistrate Judge denied Casas' motion to compel discovery. However, on March

---

2. For the reasons further stated, there is no need to address Mita's contention that these claims are time barred.

1993 Casas submitted a Second Set of Interrogatories seeking once more information about acts prior to 1989. In the answer to the interrogatory Mita renewed its previous objection of irrelevancy and added that Casas' claims regarding facts prior to the 1989 Distribution Agreement "were released by the Stipulation and General Release executed between the parties on March 31, 1989". **Docket entry # 165, Exhibit 2.** Thereafter, the parties immersed themselves in a battle regarding the scope and applicability of the Release Agreement, which has reached the pre-trial stage of the case. **See,** *Correa,* at 1195 (holding that the pre-trial stage of a case is also a proper time to assert affirmative defenses).

The foregoing facts unquestionably show that when Mita had a proper warning of Casas' intention to amend its pleadings to assert the pre–1989 claims, it gave plaintiff sufficient and timely notice of the defenses of release and res judicata. Furthermore, both parties have had ample opportunity to present their arguments and supporting evidence in that respect. **See, Docket entry # 180, 204, 275, 276, 282.** No ambush has occurred and the purpose behind Rule 8(c)'s has not been violated. In sum, Mita has not waived the defenses of release and res judicata.

## RELEASE AND RES JUDICATA

Casas' arguments that Mita's liability for illegally dealing with Caguas and Oficentro was not released, are not convincing.

Under Puerto Rico law "a compromise is a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted." Article 1709 of the Puerto Rico Civil Code, 31 L.P.R.A. § 4821. "A compromise has, with regard to the parties, the same authority as res judicata". Article 1715, 31 L.P.R.A. § 4827; *Sucn. Román v. Shelga Corp.,* 111 D.P.R. 782 (1981)[3]; *Oliveras v. Miranda,* 800 F.2d 3, 7 (1st Cir.1986); *Sangiovanni v. Dominicana de Aviación,* 556 F.2d 611 (1st Cir.1977). Because of this, "a compromise shall only include the objects

specifically determined therein or which from a necessary inference from its words must be considered as included therein. A general renunciation of rights shall be understood as including only those related to the question with regard to which the compromise has been made." Article 1714, 31 L.P.R.A. § 4826; *Citibank v. Dependable Ins. Co. Inc.,* 121 D.P.R. 503, 511 & 514 (1988); *Febus v. MARPE,* —— D.P.R. —— (1994), 94 J.T.S. 19; *Negrón Rivera y Bonilla, Ex-parte,* 120 D.P.R. 61, 74 (1987).

In the case at hand, Casas and Mita signed in 1989 a Release Agreement wherein they accorded to:

fully and forever release and discharge Mita from all claims and liabilities, known or unknown, which Casas ever had, now have, or hereinafter shall or may have against Mita up and until March 31, 1989 for, upon or by reason of or in connection with the case entitled *Casas Office Machines, Inc. v. Mita Copystar, Inc., et al,* Civil No. 88–1292.

Said case was a state action filed by Casas against Mita in 1988. **Exhibit 4–A of Mita's Motion *in Limine*.** The text of the complaint in Civil No. 88–1292 shows that it was generally aimed at imposing liability upon Mita for having impaired the distribution relation established between the parties under the 1983 Distribution Agreement.

Among the instances of wrongful acts depicted in the complaint, Casas included Mita's: (1) failure to send certain equipment requested and paid for; (2) improper appropriation of certain amounts of money; (3) the designation of Centro Equipos as a new dealer in the Mayagez area; and (4) its conspiracy with unnamed entities to interfere with plaintiff's distribution rights in the Puerto Rico market. **See,** Exhibit 4–B of the Motion *in Limine.* The allegations of conspiracy and interference of the unnamed defendants were not circumscribed to any particular region of the Puerto Rico market. **See,** Exhibit 4–B, supra, p. 2 ¶ 6, & p. 4 ¶ 2; Exhibit J–5 of Casas' Opposition Reply.

---

**3.** The facts of the present case are totally distinguishable from those in *Shelga.* Hence, Casas' reliance on its holding is misplaced.

Hence, contrary to Casas assertion, the 1988 state complaint was not aimed at imposing liability upon Mita solely for having designated new dealers in the Mayagüez and Ponce areas.

Moreover, the record before us shows that since approximately 1984 Casas' President was aware that Oficentro was advertising as Mita's authorized dealer, buying its products from other dealers in the mainland and selling them in Puerto Rico. **See,** Exhibit B of Casas Memorandum on Legal Issues, Docket entry # 276; Exhibit 6 of Mita's Motion in Limine. He was also aware that since 1988 Caguas had been selling Mita products within Casas' exclusive territory. **See,** Exhibit B, supra. Oficentro and Caguas illegal dealings with Mita products prior to 1989 are undoubtfully another instance of Mita's impairment of the 1983 Distribution Agreement. **See,** *General Office Products,* at 331 (holding that Law No. 75 imposes liability on the principal or contracting party who, cognizant of the situation, fails to take the necessary measures to avoid third parties from interfering with a distributor's Puerto Rico market).

In several occasions prior to the 1988 state action, Casas brought this problem to the attention of Mita. **See,** Exhibits 15, 32, 33, 39, 41 of Casas' Amended Counter Statement to Mita's Motion for Summary Judgment. Although Mita allegedly denied having the power to prevent dealers from the mainland to resell its products to non-authorized dealers, it is unquestionable that when the state action was filed, and the release agreement signed, Casas was well aware of the situation, its effect upon its business, its rights under the law and it was duly represented by a competent attorney. Consequently, by agreeing to release Mita from all liability under the 1983 Distribution Agreement, Casas waived and forever precluded itself from judicially asserting against Mita these claims of impairment incurred prior to the 1989 Distribution Agreement.[4]

---

4. After settling the disputes under the 1983 Distribution Agreement, the parties signed the distribution agreement object of the present action.

5. Casas is also bound by the "Covenant not to Sue" included in the Release Agreement whereby

---

▮ In regards to Casas arguments that Article 1055, 31 L.P.R.A. § 3019, prohibits the release of the dolus or intentional acts allegedly incurred by Mita previous to the Release Agreement, the same is unfounded. Article 1055 is aimed exclusively at prohibiting the parties to include in a contract an "exclusionary clause" to release before hand the future intentional and dolus breach of their obligations under said contract. Albaladejo, M., *Comentarios al Código Civil y Compilaciones Forales,* Rev.Der.Priv., Madrid, 1989, T. XV, Vol. 1, pp. 465–66. Nonetheless, Article 1055 allows the parties, once the intentional breach of the contract has occurred, to release the party at fault from its liability. *Id,* at 469; Scaevola, *Código Civil,* 2d. ed., Madrid, Reus, 1957, Vol. 19, p. 620.

In this case, the parties did not include an exclusionary clause in the 1983 Distribution Agreement. On the contrary, it was after Mita had allegedly breached said contract and in view of the pending state action, that Casas released Mita from any damages its intentional or dolus acts, incurred up to March 31, 1989, could have caused it. Such an agreement is perfectly valid.

In sum, Mita's request to enforce the Release Agreement on grounds of res judicata and to disallow Casas from amending the complaint for a fourth time to ascertain claims for acts related to the 1983 Distribution Agreement and prior to the 1989 Agreement[5], is **GRANTED.**

## INJUNCTIONS AND SUPPLEMENTAL PLEADINGS

Mita argues that since Law No. 75 neither permits nor contemplates the remedy of a permanent injunction, Casas request for such a relief should be denied.

▮ Casas recently informed us that it filed a complaint in the Puerto Rico Superior Court, Caguas Part, seeking redress for Mita's wrongful termination of the 1989 Dis-

---

it agreed to forever refrain and forbear from commencing or prosecuting any lawsuit against Mita based upon, arising out of, or in connection with any claims covered by the Release Agreement. **Exhibit 4–A of Mita's Motion *in Limine.***

tribution Agreement. (**Docket entry # 312**). In light of this recent development, it would be inappropriate for this court to order Mita, through the issuance of a permanent injunction, to renew its distribution relationship with Casas without knowing if it had just cause to terminate the same. Accordingly, without addressing its merits, Mita's request to strike Casas' petition for a permanent injunction is **GRANTED** and Casas request to certify this issue to the Puerto Rico Supreme Court (**Docket entry # 294**), is **DENIED**. By the same token, Mita's request for leave to file a supplemental pleading to allege that Casas' non-performance with its contractual obligations during 1993–1994 provides just cause for termination of the 1989 Distribution Agreement, is **DENIED**.

■ In addition, Mita requested leave to plead facts to the effect that Casas is liable for the damages it suffered as a consequence of the issuance of an erroneous injunction in November, 1993. The U.S. Supreme Court has stated that "obeying injunctions often is a costly affair". *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 770, 103 S.Ct. 2177, 2185, 76 L.Ed.2d 298 (1982). A party injured by the issuance of an injunction, later determined to be erroneous, has no action for damages in the absence of a bond. *Id.*, n. 14; *International Association of Machinists v. Eastern Airlines*, 925 F.2d 6, 10 (1st Cir. 1991). If a bond exists, damages are limited to the amount of the security bond, unless there is a showing of bad faith or malicious prosecution. *International*, supra.

■ In this case Mita did not request that Casas be ordered to post a security bond. Furthermore, after re-examining the record once more, we find that there is no indication in it to the effect that Casas proceeded in bad faith or in any other improper manner when it requested the injunction. In addition, such a supplemental pleading will only serve to further delay the final disposition of this case. See, Rule 15(d) of the Fed.R.Civ. P.; 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure, Civil 2d.*, 1990, § 1504, pp. 187, 197. Ergo, Mita's request to file a supplemental pleading stating that Casas is liable towards it for the damages it suffered by the issuance of the injunction, is **DENIED**.

## DAMAGES, BEFORE OR AFTER TAXES?

Mita's argument that the computation of damages under Law No. 75 should be after taxes, is predicated on a wrong premise.

■ An award of damages under Law No. 75 is not tax exempt. These funds are considered an ordinary gain subject to taxation. However, if they are reinvested in accordance with the conditions established by the Tax Code,[6] the award of damages will be considered, at that moment, as a capital gain.[7] Accordingly, no taxes will have to be paid then. 13 L.P.R.A. § 3112(f)(5). In essence, in cases of reinvestment, the Tax Code simply allows the **deferral of payment of taxes** until the dealer decides to extract the company's profits over which it will then have to pay taxes, for the same will then be recognized as ordinary income. In other words, the tax code "provides the dealer with the same opportunity he would have enjoyed had the profits been obtained in the regular course of business". See, *Ballester Hermanos, Inc. v. Campbell Soup Co.*, 1993 WL 269656, 1993 U.S.Dist. Lexis 9619. E.g. 26 U.S.C. § 1241.

Hence, allowing the calculation of damages after taxes would be inequitable for we would be forcing the dealer to pay taxes twice. Consequently, Mita's request to disallow the evidence of lost profits before taxes is **DENIED**.

---

6. The Tax Code allows a dealer, who has substantial capital invested in its distribution business, to reinvest in it any payment received from his principal for the modification, damages or conclusion of their distribution contract under Law No. 75. This must be done within one year from the receipt of the funds. Puerto Rico Law No. 91 of June 29, 1954, Section 112(f)(5), 13 L.P.R.A. § 3112(f)(5).

7. After all, said damages are but the equivalent of the product of several years of a dealer's work and not a sudden profit made during the course of a single fiscal or calendar year. See, Colón, W.W. & Ramiro L. Colón, Jr., *El contrato de distribución o de agencia*, 27 Rev.Der.Prtño. 225, 297–302 (1968).

## LOST PROFITS

■ Mita requests that we disallow the testimony of Casas' economist because his reliance on the sales of Mita products lost to Oficentro and Caguas, as a measurement of Casas' damages, erroneously seizes the fruits of the distribution efforts of other distributors and neglects Casas' actual sales history. Casas duly opposes.[8]

When a principal has incurred in an illegal act prohibited by the statute it must indemnify the dealer to the extent of the damages caused him. 10 L.P.R.A. § 278b. Among the factors established in the statute, that may be taken into consideration when awarding damages to an injured dealer, is lost profits. The statute defines it as:

> the amount of the profit obtained in the distribution of the merchandise or in the rendering of the services, as the case may be, during the last five years, or if less than five, five times the average of the annual profit obtained during the last years, whatever they may be. 10 L.P.R.A. § 278b(d).

Section 278b(d) clearly establishes that when computing lost profits, what the dealer is able to recover is those profits obtained during the last five years previous to the illegal act. *Computec Systems Corp. v. General Automation, Inc.*, 599 F.Supp. 819, 827 (D.P.R.1984).

■ The apparent rigidity of this method can be better understood in cases were the distribution contract is terminated in its entirety. See, *San Juan Mercantile Corp. v. Canadian Transport Co., Ltd.*, 108 D.P.R. 211, 216 (1978). In such a case, since the dealer is totally severed from the line, there is no possibility of predicting with certain degree of reasonableness whether the dealer would have continued showing the same trend of sales it had displayed before the termination. Therefore, in order to prevent the agent from benefiting from an upswing in sales post-termination, which is not necessarily attributable to his own efforts,[9] the statute limits the evidence of damages to past events and does not contemplate the use of evidence of events after the illegal act. *Telenetworks, Inc. v. Motorola*, 906 F.Supp. 75, 77 (D.P.R.1995). It has been in this context that other members of this court have held that post-termination evidence is inadmissible for being speculative in nature. See, *Homedical Inc. v. Sarns/3M Health Care, Inc.*, 875 F.Supp. 952, 954 (D.P.R.1995); *Telenetworks*, supra; *Ballester*, 1993 WL 269656 at *3, at 21.

■ Nonetheless, we understand that a critical difference exists between a termination and an impairment case which may admit, in the later, the **limited** use of evidence of sales made by other dealers.[10] In an infringement case, the dealer is not totally

---

**8.** Casas' allegations of equitable and judicial estoppel lack proper foundation. In *In re Oficentro J.P., Inc.*, No. 92–00572(ESL), the Bankruptcy Court never made a determination of damages. It merely estimated the proof of claim filed by Casas against Oficentro regarding the damages sought in the present case. (Exhibit K of Casas Memorandum on Legal Issues, Docket entry # 276). Hence, there was no determination binding upon the proceedings before this court nor upon the parties in this case for the effect of the computation of damages. As to the opinion rendered by Mita's expert, it has not been formally adopted by Mita nor presented as its position regarding damages. The expert report was presented to this court in support only of the analysis made of the reasonableness of the quotas and not in regards to the computation of damages. See, Docket entry # 214. Moreover, the opinion of an expert witness regarding a matter of law is not binding on the court.

**9.** The purpose of Section 278b(d) is to ensure that the actual damage caused the dealer is compensated. *San Juan Mercantile*, at 216. This compensation is for services actually rendered by the dealer and not an indemnification for a typical breach of contract nor a compensation of a social nature. *Id; Homedical*, infra, at 954; *Draft–Line*, at 847.

**10.** The damages listed in Section 278b are mere guidelines to be flexibly applied by courts depending on the facts and circumstances in each case. *Marina Industrial v. Brown Bovery*, 114 D.P.R. 64 (1983); *Telenetworks*, supra. If the facts and circumstances of a given case warrant a different method to compute damages, which is consonant with the general law of damages, we understand there is no impediment in departing from the statute. See, *Computec*, at 826–27; *Draft–Line*, supra. Cf. *Telenetworks*, supra. After all, Law No. 75 provides for a liberal interpretation of its provisions in furtherance of the remedial considerations behind it. See, 10 L.P.R.A. § 278c.

severed from the line as it is in a termination case. On the contrary, since it is still bound to the line, the dealer continues to sell or render services ·after the principal's illegal acts, but arguably with greater competition. It is precisely because of this fact that the degree of speculation inherent in the use of evidence post-infringement can be reduced in this type of case *vis a vis* a termination case.

■ The evidence of the injured dealer's efforts post-infringement, in light of its trend of sales before the infringement, makes plausible a reasonable prediction of what percentage of the sales made by the new competitors can be ascribed to it as a measure of its actual damages. **See**, Antonetti, S., *ob. cit.*, at 257. For instance, if the sales made by the distributor after the infringement show a decline from the trend it was expected to experience in the future,[11] it can be reasonably assumed that the difference between these two amounts, if within the principal's total post-infringement sales, is the amount of damages caused to it by the principal's illegal acts. *Id.*

Although damages need not be proven with mathematical certainty, the claimant must furnish proof regarding the reasonable probability of having continued obtaining profits. *Pate v. U.S.A.*, 120 D.P.R. 566, 570 (1988). It is hornbook law that "the mere possibility of future profit, without acts that determine at least an ostensible and deliberate purpose of their effective exercise, does not offer a judicial basis for an award of damages ...". Id., (citing *Velazquez Lozada v. Ponce Asphalt, Inc.*, 113 D.P.R. 39, 48 (1982)). Hence, even in infringement cases, it would definitely be speculative to presume, without sufficient and valid proof to substantiate such an assumption, that all the sales made by the other dealers would have been made by the plaintiff. To hold otherwise would be allowing the imposition of punitive damages upon the principal, which is prohibited by the Puerto Rico general law of damages. **See**, *Marina Industrial*, at 90. In

addition, we would be impermissibly shifting plaintiff's burden of proof regarding damages. **See** *Id. Zambrana v. Hospital Santo Asilo de Damas*, 109 D.P.R. 517, 521 (1980); *Computec*, at 827 (holding that in terms of lost profits, a claimant must prove that they were frustrated because of the debtor's conduct, that they ·can be estimated on some reasonable· basis that must be provided by the claimant, such as. profits previously made by it **in a similar period and circumstances**). In conclusion, post-infringement evidence may be admissible only to the extent it takes into account the injured dealer's past sales or profit history, its actual performance as well as other relevant factors that recognize its own capacity to perform in the manner predicted.[12]

In the case at hand, Casas' expert erroneously presumes that, but for Mita's illegal acts, Casas would have realized all the sales made by Caguas and Oficentro. In so doing, he fails to consider relevant factors such as Casas' past performance, the market conditions, the economy, the internal structure of Casas at different stages. Most of all, Casas' expert overlooked an important factor in this case, the fact that, as Casas alleges, it has been subjected to intraband competition since 1984. That is, there is no historical data of "free of competition sales" on which to obtain the trend of Casas' sales. Without this, there is no reasonable way of determining Casas' capacity to perform without competition, to what degree did Mita's illegal acts actually affected Casas' sales and what percentage of the sales made by Caguas and Oficentro can be rationally ascribed to Casas as actual damages. The situation. is worsened by the fact that at some point during Mita's acts of infringement, Casas' sales increased even with the alleged competition of Caguas and Oficentro. See, Table 1 of Casas' expert report, Exhibit D of Casas' Opposition Reply.

■ In light of the circumstances present in this case, were we are devoid of a valid

---

11. This trend must be calculated according to the injured dealer's previous sales or profits and in light of the market conditions, the economy, the internal structure of the dealer's business before and after the infringement, among other relevant

factors which put it in its proper perspective. That is, which take into account the dealer's ability to perform in the manner predicted.

12. See footnote 11.

and acceptable method to determine what percentage of the sales made by Caguas and Oficentro can be reasonably ascribed to Casas as a measure of its actual damages, we must conform to the methods provided by the Dealer's Act for calculating damages. Thus, Mita's motion to disallow the testimony of Casas' economist in regards to his computation of lost profits, is **GRANTED.**

Having disposed of the issues of state law raised by the parties, there is no need to certify them to the Supreme Court of Puerto Rico for resolution. See, *VanHaaren v. State Farm Mutual Automobile Insurance Co.*, 989 F.2d 1, 3 (1st Cir.1993) (holding that it is inappropriate for a federal court to use the certification procedure when the course state courts would take is reasonably clear); *R.W. International Corp. v. Welch Foods, Inc.*, 88 F.3d 49 (1st Cir.1996); *Collazo–Santiago v. Toyota Motor Corp.*, 937 F.Supp. 134, 138 (D.P.R.1996) (holding that a court should exercise its discretion to certify only when it lacks confidence in the accuracy of its prediction). Consequently, Casas' motion for certification of these matters is **DENIED.** (Docket entry # 294).

**WHEREFORE,** for the reasons stated herein, we rule as follows:

1. Mita's request to disallow Casas from amending the complaint for a fourth time to ascertain claims for acts related to the 1983 Distribution Agreement and prior to the 1989 Agreement, is **GRANTED.**

2. Mita's request to strike Casas' petition for a permanent injunction is **GRANTED.**

3. Mita's request for leave to file supplemental pleadings, is **DENIED.**

4. Mita's request to disallow the evidence of lost profits before taxes, is **DENIED.**

5. Mita's motion to disallow the testimony of Casas' economist in regards to his computation of lost profits, is **GRANTED.**

6. Casas' request to certify to the Puerto Rico Supreme Court certain issues of state law (**Docket entry #294**), is **DENIED.**

**SO ORDERED.**